**Jerry GAINES, Sr., Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 97–39.**

United States Court of Veterans Appeals.

Aug. 6, 1998.

Kenneth M. Carpenter, Topeka, KS, on the brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Peter M. Donawick, Washington, DC, were on the brief for appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a concurring opinion.

STEINBERG, Judge:

The appellant, Vietnam veteran Jerry Gaines, Sr., appeals through counsel a December 31, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying his claim for service connection for post-traumatic stress disorder (PTSD). Record (R.) at 2, 7–8. The appellant filed a brief and a reply brief, and the Secretary filed a brief. The parties agree that a remand is required but disagree about the bases for such a remand. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the BVA decision and remand the matter for further development and readjudication.

## I. Facts

The veteran served on active duty in the U.S. Marine Corps from August 1962 to October 1966. R. at 39. His service records do not reflect the award of any military decoration that would presumptively establish that he engaged in combat with the enemy; however, a notation in his personnel records, on a page captioned "Combat History—Expeditions", stated that he had "[p]articipated in operations against Viet Cong, Chu Lai, South Vietnam", from March 26, 1966, to September 1, 1966. R. at 191; *see also* R. at 193. His personnel records note, and the Secretary concedes, that for at least part of his service in Vietnam his primary duties included "0331 [machine gunner]". Secretary's Brief (Br.) at 2; R. at 190.

In February 1994, he filed with a Department of Veterans Affairs (VA) regional office (RO) a claim for VA service-connected disability compensation or non-service-connected pension for, inter alia, PTSD. R. at 144–49. The VARO sought specific information with regard to stressors (R. at 151–52). He responded by letter that he had been a machine gunner attached to a division supply unit in Chu Lai, Vietnam (R. at 181); he further stated that he had been troubled by "so many people . . . dying around [him]" and by the threat of being killed by white service members (R. at 182). A July 1995 RO decision denied the claim, noting that there was no diagnosis of PTSD. R. at 208–10.

In an August 1995 VA compensation and pension medical examination for PTSD, the examining psychologist concluded: "The pattern of results [is] consistent with the profiles of veterans who suffer from [PTSD], and thus are supportive of this veteran's application for compensation". R. at 264. The VA examining psychiatrist diagnosed PTSD; in discussing the history of the illness, he noted:

> Mr. Gaines served in Vietnam in 1965–66 for nine months toward the end of the [sic] his four-year enlistment. He was a machine gunner attached to a Division Supply Company stationed primarily at Chu Lai. The base was subject to sniper and mortar attacks and, at times, he manned the machine gun on the perimeter and though he would fire if there was any movement, he often could not see exactly what his target was. At times, he saw casualties and remains brought back to the base from the field. Mr. Gaines described some racial tension in his barracks and stated that he kept to himself as much as possible throughout his stay in Vietnam.

R. at 265–66. In October 1995, the RO again denied the claim, concluding as follows: "Although there is a clinical diagnosis of PTSD, there is no evidence of record to corroborate the veteran's history of stressful events". R. at 270. The veteran filed a timely appeal to the Board. R. at 282, 300. He provided a letter, jointly signed by a Ph.D. (apparently a psychologist) and a psychology trainee, stating that he had been diagnosed with PTSD and that he experienced "psychological distress when exposed to situations similar to those in Vietnam". R. at 275.

In a May 1996 hearing before the RO, the veteran testified under oath that while in Vietnam he had provided machine-gun support to the supply company to which he was assigned, guarded the perimeter during which time he received fire, went on patrol, and went out on trucks to make deliveries; he further testified that he had seen the dead bodies of those he had shot and that he had seen a friend, Lonnie Gay, from another company shot and killed. R. at 304–07. He also testified that once, when he was taken to a hospital ship for an eye appointment, he saw unbagged dead bodies and wounded people calling for help. R. at 307–08. He stated that he was fired upon while manning a truck-mounted machine gun in a truck convoy. R. at 308–09. He also stated that he was harassed by white Marines because he was black. R. at 309–10. The veteran's representative noted at the hearing that the veteran had applied to the U.S. Department of the Navy to have his records corrected, "requesting that he be issued the Combat Action Ribbon". R. at 310. After the hearing, the RO sought verification from the Marine Corps of the death of Lonnie Gay (R. at 316), but the record on appeal (ROA) does not suggest that VA otherwise attempted to confirm the alleged stressors. As to the death of Lonnie Gay, the Marine Corps reported that a U.S. soldier by that name was killed in Vietnam two years after the veteran had left the country. R. at 403.

In the December 31, 1996, BVA decision here on appeal, the Board acknowledged that the veteran had a current diagnosis of PTSD (R. at 4) but found that he had not engaged in combat:

While the Vietnam Service Medal signifies that the veteran was assigned for duty in the Republic of Vietnam, neither this award, nor the M–14 Rifle Expert Badge and the National Defense Service Medal, in and of themselves signify exposure to combat. The report that the veteran "participated in operations" against an enemy force does not indicate that he was involved in "combat operations." Thus, the available service department evidence of the veteran's service does not indicate the veteran engaged in combat or that the veteran was awarded the Purple Heart, Combat Infantryman Badge, or similar combat citation.

R. at 6. The BVA stated that it was "not obligated to accept the veteran's uncorroborated account of his Vietnam experiences" (R. at 7) and thus concluded: "In the absence of [evidence of combat service], the VA cannot accept the veteran's claimed combat stressor without verification of the claimed in[-]service stressor" (R. at 6). The Board noted that the death of Lonnie Gay had taken place two years after the veteran's departure from Vietnam (R. at 6–7) but did not discuss any of the other stressors, concluding that his "description of the events of his service lacks the specificity required for verification; as a result, his claimed stressors have proved unverifiable". R. at 7.

## II. Analysis

On appeal to this Court, the appellant argues that the Court should revisit its decision in *Moreau v. Brown*, 9 Vet.App. 389 (1996), and hold that a current medical opinion diagnosing PTSD can suffice to verify the in-service stressors on which that diagnosis is based. The Secretary argues that the BVA decision should be vacated and the matter remanded for readjudication because the BVA did not provide an adequate statement of reasons or bases for its determination that the veteran had not engaged in combat insofar as the decision failed to evaluate the veteran's sworn testimony that he had engaged in combat. He also argues that VA failed to satisfy the 38 U.S.C. § 5107(a) duty to assist because the only stressor it attempted to verify was Lonnie Gay's death. This case thus presents two issues: (1) The prop-

er standard for determining whether a veteran has engaged in combat as applied to this veteran's case; and (2) the sufficiency of the alleged stressors in the instant case.

### A. Claim for PTSD Service Connection

#### 1. Well–Grounded PTSD Claim.

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). A well-grounded service-connection claim under 38 U.S.C. § 1110 generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and a current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998); *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993)); *Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability[,] there can be no valid claim"). A Board determination whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grivois v. Brown,* 6 Vet.App. 136, 139 (1994); *Grottveit, supra.*

■ As to a PTSD claim, the Court has held that such a claim was well grounded where the veteran "submitted medical evidence of a current disability; lay evidence (presumed to be credible for these purposes) of an in-service stressor, which in a PTSD case is the equivalent of in-service incurrence

or aggravation; and medical evidence of a nexus between service and the current PTSD disability". *Cohen (Douglas) v. Brown,* 10 Vet.App. 128, 136–37 (1997); *see also Caluza, supra; cf.* 38 C.F.R. § 3.304(f) (1997). Upon de novo review, the Court concludes that the veteran has presented a well-grounded claim for service connection for PTSD. He has adduced (1) medical evidence of a current diagnosis of PTSD (R. at 264–66); (2) lay evidence of an in-service stressor (R. at 304–10); and (3) medical-nexus evidence generally linking his PTSD to his service (R. at 264–66, 275). *See Cohen, supra; see also Suozzi v. Brown,* 10 Vet.App. 307, 309 (1997). The Board thus properly reached the merits of the PTSD claim.

#### 2. Merits Adjudication.

■ However, even though the Court concludes that the appellant has presented a well-grounded claim for service connection for PTSD, "eligibility for a PTSD *service-connection award* requires" more; specifically, "(1) [a] current, clear medical diagnosis of PTSD ...; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between current symptomatology and the specific claimed in-service stressor." *Cohen,* 10 Vet.App. at 138 (emphasis added); 38 C.F.R. § 3.304(f); *see also Suozzi, supra.* A determination of service connection is a factual finding, *see Horowitz v. Brown,* 5 Vet.App. 217, 221 (1993); *McGraw v. Brown,* 7 Vet.App. 138, 142–43 (1994), and the Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

■ In the instant case, the veteran's lay testimony as to in-service stressors suffices to well ground his claim, *see Cohen, supra;* however, as to adjudication on the merits, "[i]f the claimed stressor is not combat related, a veteran's lay testimony ... is insufficient to establish the occurrence of the stressor and must be corroborated by 'credible supporting evidence' ", *id.* at 142 (citing *Mor-*

*eau,* 9 Vet.App. at 395–96). On the other hand, "if the veteran did engage in combat with the enemy, he is entitled to have his lay statements accepted, without the need for further corroboration, as satisfactory evidence that the claimed events occurred, unless his descriptions are not consistent with the circumstances, conditions, or hardships of service or unless the BVA finds by clear and convincing evidence that a particular asserted stressful event … did not occur". *Cohen,* 10 Vet.App. at 146–47. The determination of this material fact—whether a veteran engaged in combat—is thus a critical part of the adjudication of a PTSD claim in general and specifically in this case. *See id.* at 145; *Zarycki v. Brown,* 6 Vet.App. 91, 98 (1993).

### B. Interpretation and Application of 38 U.S.C. § 1154(b)

The determination as to whether a veteran was engaged in combat with the enemy is particularly significant in PTSD cases in light of the provisions of 38 U.S.C. § 1154(b) that specifically allow combat veterans, in certain circumstances, to use lay evidence to establish service incurrence of a disease or injury by relaxing the evidentiary requirements for adjudication of certain combat-related VA-disability-compensation claims—both as to the evidence that a claimant must submit in order to make such a claim well grounded and as to the evidence necessary in order to establish service connection of a disease or injury. *See Caluza, supra; see also Jensen v. Brown,* 19 F.3d 1413, 1416–17 (Fed.Cir. 1994); *Chipego v. Brown,* 4 Vet.App. 102, 105 (1993); *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992); *Smith (Morgan) v. Derwinski,* 2 Vet.App. 137, 140 (1992); *see generally Velez v. West,* 11 Vet.App. 148 (1998); *Libertine v. Brown,* 9 Vet.App. 521 (1996), *appeal dismissed for lack of jurisdiction,* 132 F.3d 50 (1997) (table). Section 1154(b) provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service[ ] connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service[ ]connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service[ ]connection in each case shall be recorded in full.

38 U.S.C. § 1154(b); *see also* 38 C.F.R. § 3.304(d) (1997).

 The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Cohen,* 10 Vet.App. at 145; *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert,* 1 Vet.App. at 57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza,* 7 Vet.App. at 506; *Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Gilbert, supra.*

As to making a determination whether the advantages of section 1154(b) should be afforded, that Court has stated that the Board "must make specific findings of fact as to whether or not the veteran was engaged in combat … [and] must provide adequate reasons or bases for its finding, including a clear analysis of the evidence which it finds persuasive or unpersuasive with respect to that issue". *Zarycki, supra.* The Court has also stated that a determination of combat status is to be made "on the basis of the evidence of record", *Cohen,* 10 Vet.App. at 146 (citing

*West (Carleton) v. Brown,* 7 Vet.App. 70, 76 (1994)), and that section 1154(b) itself "does not *require* the acceptance of a veteran's assertion that he was engaged in combat", *Cohen, supra* (emphasis added). The Court has also held that combat status may be determined "through the receipt of certain recognized military citations or other supportive evidence". *West,* 7 Vet.App. at 76. The phrase "other supportive evidence" serves to provide an almost unlimited field of potential evidence to be used to "support" a determination of combat status.

■ In the instant case, the evidence in the ROA relating to the veteran's status as a combat veteran is undisputed and entirely in his favor, as follows: (1) His testimony that he engaged in combat (R. at 304–10); (2) personnel records (page captioned "Combat History—Expeditions", stating that the veteran "[p]articipated in operations against Viet Cong, Chu Lai, South Vietnam", R. at 191); and (3) his machine-gunner MOS for at least part of the time that he was in Vietnam, as noted in his personnel records (R. at 190) and conceded by the Secretary (Secretary's Br. at 2).

Despite the evidence in support of the veteran's position that he was engaged in combat, the Board made no mention of the benefit-of-the-doubt rule under 38 U.S.C. § 5107(b), *see Cohen,* 10 Vet.App. at 151 ("reasons-or-bases requirement of 38 U.S.C. § 7104(d)(1) applies to the Board's application of the benefit-of-the-doubt rule"); *Williams (Willie) v. Brown,* 4 Vet.App. 270, 273–74 (1993) ("where there is significant evidence in support of an appellant's claim ... Board must provide a satisfactory explanation as to why the evidence was not in equipoise"). The BVA decision stated merely that the veteran had not been awarded any medals to show combat service; that the statement in his personnel records that he had "participated in operations" against the enemy did not mean that he was engaged in combat; and that thus "the available service department evidence of the veteran's service does not indicate [that] the veteran engaged in combat". R. at 6. The Board then concluded that the combat stressors related by the appellant required corroboration. *Ibid.*

In making this analysis, the Board committed four errors in its statement of reasons or bases under 38 U.S.C. § 7104(d)(1): (1) It neglected to analyze the veteran's own sworn testimony that he had engaged in combat, *see Cohen,* 10 Vet.App. at 145; (2) it failed to explain its conclusion that the record stating that the veteran "participated in operations against Viet Cong" (R. at 191) did not indicate that he was involved in "combat operations" (R. at 6); (3) it failed to discuss the application of the benefit-of-the-doubt rule, *see Cohen,* 10 Vet.App. at 151; *Williams* and *Gilbert,* both *supra;* and (4) it never made a direct finding as to combat status, instead implying a negative determination in the process of stating that a noncombat veteran's stressors require independent corroboration, *see Cohen,* 10 Vet.App. at 145 (Board's failure to make express finding regarding combat was prejudicial error in PTSD case); *Zarycki, supra.* Hence, because of the foregoing deficiencies in the BVA decision, the Court concludes that it is premature for it to address whether the evidence compels a determination that the veteran was engaged in combat. *See Cohen, Simon,* and *Masors,* all *supra; Gilbert,* 1 Vet.App. at 57.

If the Board decides on remand that this veteran is entitled to the adjudicative benefit of section 1154(b), "he is entitled to have his lay statements accepted, without the need for further corroboration, as satisfactory evidence that the claimed [in-service] events occurred, unless his descriptions are not consistent with the circumstances, conditions, or hardships of service or unless the BVA finds by clear and convincing evidence that a particular asserted stressful event ... did not occur". *Cohen,* 10 Vet.App. at 146–47. In any event, a complete readjudication, with a full statement of reasons or bases, must occur on remand. *See* 38 U.S.C. § 7104(a), (d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991); *see also Cohen,* 10 Vet.App. at 150–51 (return of examination to examiner for clarification required as to whether PTSD is linked to specific in-service stressor). Finally, the Court notes that the Board correctly stated that, as of the date of that decision, "the available service department evidence of the veteran's service [did] not indicate ... that the veteran was awarded the Purple

Heart, Combat Infantryman Badge, or similar combat citation" (R. at 6); that, according to the Secretary, the Marine Corps Combat Action Ribbon (which would ordinarily be enough to establish "the claimed in[-]service stressor" and thus, presumably, combat status, see 38 C.F.R. § 3.304(f)) "became an authorized award in February 1969, so [that the veteran] would not have been considered for this award at the time of his service in Vietnam or at the time of his separation from active service" (Secretary's Br. at 8 n. 1); and that the veteran had apparently applied to the Navy as of May 1996 to be awarded the Combat Action Ribbon (R. at 310). On remand, the veteran may wish to submit evidence of any result from that process, which would appear to be highly relevant to the resolution of the combat question, or to seek a delay pending the outcome of the application process.

As to the appellant's request that the Court revisit Moreau, supra, as to whether an in-service stressor can be established solely on the basis of a veteran's testimony with corroboration thereof from an examining psychiatrist, the Court need not address this point in view of the above deficiencies (relating to combat status) in the Board's decision that, if remedied, may obviate the need for corroboration of in-service stressors asserted by the veteran. (The Court notes, however, that even if it were inclined to reexamine its Moreau conclusion, recently reaffirmed in Cohen, 10 Vet.App. at 142; cf. Madden v. Gober, 125 F.3d 1477, 1480–81 (Fed.Cir.1997) (rejecting appellant's contention that his lay testimony of manifestation of claimed condition sufficed to invoke presumption under 38 U.S.C. §§ 1110, 1112), and we are not so inclined, this panel would lack the authority to do so, because "[o]nly the en banc Court may overturn a panel decision". Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992).)

### C. Fee Agreement

On March 11, 1998, the Court ordered the appellant either to show cause why the fee agreement between him and his attorney that was filed with the Court on March 5, 1997, should not be found to be unreasonable under Shaw v. Gober, 10 Vet.App. 498 (1997), or to file an amended fee agreement. On March 27, 1998, the appellant filed an amended fee agreement.

In its March 11, 1998, order, the Court specifically emphasized a provision in the March 5, 1997, fee agreement that precluded an offset for costs and expenses advanced by the appellant if any recovery by the attorney under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), was for less than the amount claimed in the application. That provision has been corrected in the March 27, 1998, fee agreement. However, the Court also noted in its March 1998 order that Shaw had concluded that a "fee agreement is 'unreasonable' on its face to the extent that it may be read as precluding an [EAJA award offset against a contingent fee] where the Court remands with a direction that the BVA award benefits that the Court finds are required as a matter of law". Shaw, 10 Vet.App. at 505. Provisions in the revised fee agreement in the instant case seem to invoke a similar injunction. See Fee Agreement at 5 (provision 4.e.) ("in the event the Court remands veteran's case for readjudication by [VA], no offset will be made ... in the amount of the sum of the attorney fees awarded by the Court under the provisions of EAJA, if there is an ultimate successful recovery of past-due benefits for Client"); but see Fee Agreement at 2 (provision 2.j. (in event of remand, no EAJA award offset "against any subsequent attorney fees payable by the client from past due benefits ...", because the parties have agreed ... that this will require additional work before the agency")); but cf. Fee Agreement at 5 (provision 4.d. (providing for offset of attorney fees by EAJA award "in the event the Court directs [VA] to award benefits")). However, insofar as the Court in the instant opinion has not remanded with a direction to award benefits, the Court is not called upon to apply the Shaw holding on this point. The Court thus declines to make any additional review of the fee agreement at this time.

### III. Conclusion

Upon consideration of the ROA and the submissions of the parties, the Court vacates the December 31, 1996, BVA decision and remands the matter of service connection for PTSD for expeditious further development

and readjudication, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1154(b), 5107(a), (b), 7104(a), (d)(1), 7261; 38 C.F.R. § 3.304; *Cohen*, 10 Vet.App. at 151; *Williams* and *Fletcher*, both *supra*—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.

HOLDAWAY, *Judge,* concurring: I concur in the opinion in all but one respect. The majority finds error in the Board's failure to discuss its "conclusion" that participating in "operations against the Viet Cong" did not necessarily indicate that the appellant was involved in combat operations. The Board's conclusion was, in fact, an unexceptionable statement requiring no discussion or explanation. All personnel in a combat theater, and many outside it, are engaged in "operations." That is why they are there, whatever their assignment or military specialty. That includes many who are remote from the exposure to the actuality or the threat of hostile fire. In effect, all the Board said was that simply "being there" was not, *of itself,* evidence that the appellant was exposed to the stress of combat. That is a truism requiring no explanation.