Wilbur B. HARTH, Jr., Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 98–2061

United States Court of Appeals
for Veterans Claims.

July 19, 2000

Wilbur B. Harth, Jr., pro se.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Mary Ann Flynn, Acting Deputy Assistant General Counsel; and Mark M. McNabb, all of Washington, D.C., were on the pleadings for the appellee.

Thomas J. Reed, of Wilmington, DE, was on the brief for Delaware Volunteer Legal Services, Inc., as amicus curiae.

Before KRAMER, FARLEY, and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, Vietnam veteran Wilbur B. Harth, Jr., appeals a June 19, 1998, Board of Veterans' Appeals (BVA or Board) decision that denied a claim for Department of Veterans Affairs (VA) service connection for post-traumatic stress disorder (PTSD) as being not well grounded. Record (R.) at 14. The appellant has filed an informal brief, a brief of amicus curiae has been filed, and the Secretary has filed a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will reverse the BVA decision and remand the appellant's claim for further adjudication consistent with this opinion.

## I. Background

The veteran served in the U.S. Navy from October 1965 to December 1968, with service in Vietnam. R. at 50. His service medical records did not reveal any pertinent conditions. *See* R. at 17–44.

In March 1971, the veteran was admitted to a private hospital and was diagnosed as having "[a]cute psychosis secondary to drug abuse, hallucinogens, LSD". R. at 406–07. A February 1984 VA hospital summary recorded his medical history and included the following: "He also has a history of left occipitoparietal head injury in Viet Nam when he was 'clubbed' on the head sustaining a scalp laceration, but apparently no bone injury." R. at 64. A November 1987 VA medical record concluded with an assessment of "[d]epression". R. at 261.

On August 14, 1988, the veteran was admitted to the Eastern Oregon Psychiatric Center and diagnosed as having a "[p]sychotic disorder ..., associated with alcohol abuse and possibly other substances". R. at 79. The report of an examination conducted on August 16, 1988, during the same admission concluded with an impression of "psychotic disorder ..., rule out organic mental disorder, delusional disorder, associated with LSD, marijuana?, rule out bi-polar disorder, manic". R. at 81. The veteran was admitted to a private hospital emergency room on September 6, 1988, and the record of this visit contained an impression of "undetermined psychosis". R. at 253. He was subsequently transferred to the Eastern Oregon Psychiatric Center and diagnosed as having an "[a]ntisocial personality" and "[a]lcohol and substance abuse by history ... [p]sychotic disorder". R. at 417. On September 15, 1988, he was examined by a private psychiatrist, who diagnosed him as having "[s]chizophrenic [i]llness, paranoid type[;] ... [p]assive [a]gressive [p]ersonality [d]isorder[;][s]ubstance [a]buse, poly[;] ... [and] CNS [ (central nervous system) ] injury (substance abuse)". R. at 54. The examiner opined that the veteran "is suffering from a[s]chizophrenic or [s]chizoform illness in which he may have sustained some brain injury via drug usage ... [; t]he clinical profile is of [p]aranoid [s]chizophrenia". *Ibid.* In October 1988, a psychiatrist from the Oregon State Hospital diagnosed the veteran as having "[p]olysubstance abuse[; a]lcohol abuse[; d]elusional disorder, secondary to hallucinogenic drug use[; p]ossible schizophreniform disorder[; and p]ossible paranoid schizophrenic disorder". R. at 88.

In December 1993, the veteran applied for VA service connection for, inter alia, PTSD (R. at 69) and completed a VA PTSD questionnaire (R. at 74–76). A

March 1994 VA compensation and pension (C & P) examination report contained the veteran's description of his service in Vietnam, as follows:

> In February[ ] 1967, the veteran entered Vietnam. He was assigned to River Run Five of the Task Force 116. He underwent some additional training to qualify for duty and during this time was under fire. He remembers this incident well as one of his key incidents. There was a night time fire fight and he was exposed to tracer rounds from the shore. He remembers the tracer rounds coming toward him and feeling silly that he was hiding behind thin fiberglass, which would not have stopped any of the rounds. He was not personally wounded.... He was mainly based in S[ai]gon and was also there during the January[ ] 1968[T]et offensive.

> The main incident that he remembers after the above incident during his certification[ ] was an attack by "cowboys" in S[ai]gon. He describes these as renegades, probably North Vietnamese regulars or civilians who would tend to attack American servicemen. He was somewhere in the middle of his tour and was assaulted and "rolled". His money was stolen and he was clubbed in the head. He was left for dead and taken to a clinic after he was found....

> ....

> In his role as attache to the commander, ... it was his function to accompany the commander who would inspect the damage of equipment, see wounded soldiers in the hospital and see off the bodies as they were being loaded onto the transports back to America.

R. at 115–16. The report of a separate March 1994 VA psychiatric examination of the veteran stated a diagnosis of, inter alia, PTSD, "in partial or complete remission". R. at 124. In July 1994, an RO decision denied, inter alia, service connection for PTSD. R. at 128.

A January 1995 letter, entitled "PTSD Treatment Summary", to the RO by a VA MSW counselor at the VA Vet Center in Salem, Oregon, stated that the veteran "ha[d] been attending [a] veterans' PTSD therapy group" for approximately 14 months. R. at 137. The counselor stated:

> On more than one occasion as [the veteran] related some of [his] experiences ..., he showed a range of emotions from sadness to anger to guilt and shame. His demeanor and affect appeared to reflect true experiences. Moreover, in the group of his peers (two of whom are service connected for PTSD with extensive combat experience), his experiences have been accepted without hesitation. In my experience of the past seven years as a therapist working predominantly with war trauma, I also find his experience to ring true and have observed the effects of his war experience to still be troublesome to him today.

> In summary, [the veteran] is a man who is severely affected by his war experience. He is still experiencing intrusive thoughts and memories of the war; he has a difficult time getting in touch with his feelings, has a restricted range of affect, [and] experiences feelings of detachment and estrangement from others. Moreover, difficulty controlling his anger, long term alcohol abuse, and hypervigilance have all been chronic problems.

R. at 138. An April 1995 RO decision also denied service connection for PTSD. R. at 199. A May 1995 Oregon State Hospital discharge summary contains a diagnostic impression of "[r]ule out [PTSD]", as well as a final assessment that included the following: "Even though he may suffer from symptomatology of [PTSD], he does not acknowledge this as a problem at this time." R. at 435–36. Subsequent RO decisions in August (R. at 210) and September (R. at 221) 1995 again denied the veteran's claim. In February 1997, the BVA remanded the claim and directed the RO to gather more information in its development. R. at 376–83.

In response to the BVA remand, the veteran provided the RO with a list of his duties in Vietnam and his recollection of incidents when he had come under fire while in service. R. at 403–04. A history of the veteran's unit in Vietnam provided by the Department of the Army Center for Research of Unit Records, although not detailing by name many of the servicemen who came under fire, roughly corroborated the veteran's claims as to the combat missions of his unit. R. at 443–83. In May 1997, Lieutenant Commander (LCDR) Richard Coupe, the veteran's commanding officer in Vietnam, submitted a letter verifying that all members of his staff had participated in river patrols, and stating that, although he could not specifically recall the veteran's having participated in a particular patrol, he would have remembered his absence from such duty. R. at 431. A November 1997 VA C & P examination report recorded the examiner's conclusion that the veteran "ha[d] some symptoms of [PTSD,] ... [but] I tend to feel that he does not meet the criteria for [PTSD], and it does not appear to me that the exposure to combat and other emotional experiences created significant emotional stress to create a similar problem in almost anyone." R. at 489–90. The report concluded with a diagnosis of "does not meet specific criteria for [PTSD]". R. at 490.

In the June 1998 BVA decision here on appeal, the Board denied the veteran's claim on the ground that it was not well grounded because "the probative, competent evidence does not show a current disability due to PTSD and does not contain a clear diagnosis of PTSD". R. at 14.

## II. Analysis

### A. Chloracne Claim

■ At the outset, the Court notes that the amicus brief raises an argument on behalf of the appellant as to an asserted chloracne claim. Amicus Brief (Br.) at 22. The only Notice of Disagreement (NOD) of record in this case refers *exclusively* to a disagreement with the denial of service connection for PTSD. R. at 134. This Court lacks the jurisdiction to hear arguments on claims that were not the subject of a valid NOD. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); 38 U.S.C. § 7105; *see generally Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991); *Hamilton (Stanley) v. Brown,* 4 Vet.App. 528, 534 (1993), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994). Therefore, the Court lacks jurisdiction in this case over a chloracne claim of the veteran and will dismiss any such claim for lack of jurisdiction.

### B. PTSD Claim

■ "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). The Court has held that a PTSD claim is well grounded where the veteran has "submitted medical evidence of current PTSD; lay evidence (presumed to be credible for these purposes) of an in-service stressor, which in a PTSD case is the equivalent of in-service incurrence or aggravation; and medical evidence of a nexus between service and the current PTSD disability". *Cohen (Douglas) v. Brown,* 10 Vet.App. 128, 137 (1997); *see also Gaines v. West,* 11 Vet. App. 353, 357 (1998) (citing *Cohen (Douglas)).* The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. *See Beck v. West,* 13 Vet. App. 535, 540 (2000) (holding that, at wellgroundedness stage, Board may not weigh credibility of evidence submitted in support of claim); *Elkins v. West,* 12 Vet.App.

209, 219 (1999) (en banc) (citing *Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995)). The determination of the legal question whether a claim is well grounded is subject to de novo review by this Court. *See Hensley v. West,* 212 F.3d 1255, 1261 (Fed. Cir.2000); *Robinette,* 8 Vet.App. at 74. However, BVA findings of fact pertaining to the question of well groundedness are to be reviewed by this Court under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Hensley, supra.* Under this deferential standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them." *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

The Court notes that in the June 1998 BVA decision the Board stated that "[s]ervice connection for [PTSD] requires medical evidence establishing a clear diagnosis of the condition", citing 38 C.F.R. § 3.304(f) (1997). R. at 12. This is an incorrect statement of the law. Although the then current version of § 3.304(f) did indeed require a "clear diagnosis" of PTSD, that was a correct statement at that time only as to an **award** of service connection for PTSD. *See* 38 C.F.R. § 3.304(f) (1997); *Cohen (Douglas), supra.* The Court's opinion in *Cohen (Douglas),* issued over two months before the BVA decision here at issue, required "medical evidence of a current disability", rather than a "clear diagnosis", in order to submit a well-grounded PTSD claim. *Cohen (Douglas), supra.* Moreover, the regulation in question has since been amended, *see* 64 Fed.Reg. 32,807 (1999), and the amended version, which has been made retroactively effective to March 7, 1997, a date before the June 1998 BVA decision here on appeal, no longer requires evidence of a "**clear** diagnosis" of PTSD, *see* 38 C.F.R. § 3.304(f) (1999).

▮ Nonetheless, the Board concluded that the claim was not well grounded in part because "the probative, competent evidence ... does not contain a clear diagno-

sis of PTSD" (R. at 14), and the Secretary, quite inexplicably, argues in his January 2000 brief that the Board did not err either when it denied the claim because "[t]here is no competent medical evidence of record that contains a current, clear diagnosis that [the a]ppellant suffers from PTSD" (Secretary's Br. at 6) or when it assessed the weight and credibility of the evidence (Secretary's Br. at 6–7). *Compare* 38 C.F.R. § 3.304(f) (1998) ("[s]ervice connection for [PTSD] requires medical evidence establishing a clear diagnosis of the condition ...") *with* 38 C.F.R. § 3.304(f) (1999) ("[s]ervice connection for [PTSD] requires medical evidence diagnosing the condition in accordance with [38 C.F.R.] § 4.125(a) ..."). In addition, in its analysis of the well groundedness of the PTSD claim, the Board relied on the fact that the November 1997 VA PTSD examination had found that the veteran did not have PTSD. *See* R. at 14. The Court reminds the Secretary and the Board that only the evidence in support of a service-connection claim is to be considered when determining whether it is well grounded. *See Arms v. West,* 12 Vet.App. 188, 195 (1999), *overruled in part on other grounds by Kessel v. West,* 13 Vet.App. 9 (1999) (en banc).

▮ It is apparent that the Board erred by applying the incorrect legal standard to the well-groundedness determination regarding the veteran's PTSD claim. When the correct standard for determining the well groundedness of a PTSD claim is applied to the facts discussed by the Board and presumed credible for purposes of making the well-groundedness determination, the claim must be found well grounded as a matter of law. *See Hensley,* 212 F.3d at 1262–63. The first prong of the *Cohen (Douglas)* test for determining the well groundedness of a PTSD claim, medical evidence of a current disability, is satisfied by the March 1994 VA medical examination that diagnosed the veteran as having "[PTSD], in partial or complete remission" (R. at 124). *See id.*

at 1261 (describing the "burden of persuasion for establishing a well[-]grounded claim [as] unique, and uniquely low"). The second prong of the *Cohen (Douglas)* test, lay evidence (presumed to be credible for these purposes) of an in-service stressor, is satisfied by the veteran's assertions of being under fire in Vietnam (R. at 115–16, 403–04); the Court also notes that the stressor evidence relating to the veteran's having gone on river patrols (although not as to any "clubbing" incident) is corroborated—although it need not be for purposes of meeting the well-groundedness requirement—to a degree by the letter from LCDR Richard Coupe (R. at 431) and the Department of the Army's history of the veteran's unit in Vietnam (R. at 443–83). The third prong of the *Cohen (Douglas)* test, medical evidence of a nexus between service and the current PTSD disability, is satisfied by the January 1995 VA counselor's letter linking the veteran's current condition to his war experience. R. at 138.

The Court will thus, on de novo review, reverse the Board's June 19, 1998, decision as to lack of well groundedness and remand the veteran's claim for expeditious further development and adjudication consistent with this opinion. *See Hensley,* 212 F.3d at 1263–64. On remand, the Board must make a factual determination as to whether the veteran engaged in combat with the enemy. *See Cohen (Douglas),* 10 Vet.App. at 145–46 (discussing importance of Board making determination of whether veteran seeking service connection for PTSD "was engaged in combat with the enemy", *id.* at 145, and finding failure to do so to be prejudicial error). Furthermore, the Court notes the following in terms of the Board's placing further reliance on the November 1997 VA C & P examination that concluded with a diagnosis of "does not meet specific criteria for [PTSD]". R. at 490. In reaching this diagnosis, the examiner stated that the veteran "ha[d] some symptoms of [PTSD,] . . . [but] I tend to feel that he does not meet the criteria for [PTSD], and it does not

appear to me that the exposure to combat and other emotional experiences created significant emotional stress to create a similar problem in almost anyone." R. at 489–90. In relying on a standard of "creat[ing] significant emotional stress to create a similar problem in almost anyone", the examiner appears to have relied on the criteria for PTSD listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM), third edition (DSM–III). *See Cohen (Douglas),* 10 Vet. App. at 139–41. However, VA regulations were amended in 1996 to adopt the nomenclature of the fourth edition of DSM (DSM–IV), *see id.* at 139; these regulations abandoned the language quoted above and adopted a new standard as follows:

> The DSM–IV provides two requirements as to the sufficiency of a stressor: (1) A person must have been "exposed to a traumatic event" in which "the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others" and (2) "the person's response [must have] involved intense fear, helplessness, or horror". DSM–IV at 427–28. These criteria are no longer based solely on usual experience and response but are individualized (geared to the specific individual's actual experience and response).

*Id.* at 141. Thus, on *remand,* the Board must return the November 1997 examination report to the RO for it to obtain clarification, or further examination, in terms of the criteria of DSM–IV. *See id.* at 140 ("a return of the examination report to the RO for clarification or further examination . . . is mandated when the Board believes that that report does not accord with the applicable DSM diagnostic criteria").

Finally, the Court notes that amicus curiae has moved for an order setting this case for oral argument. Amicus Br. at 1.

There is no need for oral argument here because it "would not materially assist in the disposition of this appeal", *Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 59 (1995), and no greater relief than that provided to the appellant is available on the facts of this case. Consequently, the motion of amicus will be denied. However, the Court expresses its appreciation to the amicus for his valuable assistance to the Court and the veteran in this appeal.

### III. Conclusion

Upon consideration of the record and the submissions of the parties and amicus curiae, the Court reverses the June 19, 1998, BVA decision and remands the matter for expeditious further development and merits adjudication, on the basis of all applicable law and regulation, and issuance of a decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1154(b), 5107, 7104(a), (d)(1), 7261; 38 C.F.R. § 3.304(f) (1999)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533–34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372–73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet. App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998). The motion of amicus curiae for oral argument is denied. To the extent that the brief of amicus curiae attempts to raise a chloracne claim on behalf of appellant, any such appeal is dismissed due to a lack of jurisdiction.

REVERSED AND REMANDED.