Citation Nr: 1829735 
Decision Date: 07/25/18 Archive Date: 08/02/18

DOCKET NO. 14-17 055 ) DATE
 )
 )

THE ISSUES
 
1. Entitlement to service connection for bilateral pes planus.

2. Entitlement to service connection for residuals of a right shoulder rotator cuff tear to, include as secondary to blackouts caused by posttraumatic stress disorder.
 
3. Entitlement to service connection for left shoulder rotator cuff tear, to include as secondary to blackouts caused by posttraumatic stress disorder.
 
4. Entitlement to service connection for left wrist fusion, to include as due to blackouts caused by posttraumatic stress disorder.

5. What rating is warranted for posttraumatic stress disorder from November 18, 2010 to July 28, 2014?
 
6. What rating is warranted for posttraumatic stress disorder since July 29, 2014? 

7. Entitlement to a total disability evaluation based on individual unemployability due to service connected disorders.

 
REPRESENTATION
 
Appellant represented by: Texas Veterans Commission
 
 

WITNESS AT HEARING ON APPEAL
 
The Veteran and S.T.
 
 
ATTORNEY FOR THE BOARD
 
T. Booker, Associate Counsel
 
 
INTRODUCTION
 
The Veteran had active service from September 1968 to August 1971.
 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from July 2012 and January 2015 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama and Waco, Texas. 
 
A July 2012 rating decision VA granted entitlement to service connection for posttraumatic stress disorder, and assigned a 50 percent evaluation effective November 18, 2010. A January 2015 rating decision increased the evaluation for that disorder to 70 percent effective July 29, 2014. 
 
The Veteran testified at a video conference hearing in May 2017 before the undersigned. A copy of the transcript has been associated with the Veteran's electronic claims file.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this case should take into consideration the existence of this electronic record.
 
The issues of entitlement to service connection for bilateral pes planus, what rating is warranted for posttraumatic stress disorder since July 29, 2014, and entitlement to a total disability evaluation based on individual unemployability due to service connected disorders are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).
 
 
FINDINGS OF FACT
 
1. From November 18, 2010 to July 28, 2014, the Veteran's posttraumatic stress disorder was manifested by occupational and social impairment, with deficiencies in most areas, but not by total occupational and social impairment.
 
2. Residuals of a right shoulder rotator cuff tear were first manifested many years after service, and the preponderance of the evidence is against finding that they are in any way related to active duty service or to service connected posttraumatic stress disorder.
 
3. Residuals of a left shoulder rotator cuff tear were first manifested many years after service, and the preponderance of the evidence is against finding that they are in any way related to active duty service or to service connected posttraumatic stress disorder.
 
4. Residuals of a left wrist fusion injury were first manifested many years after service, and the preponderance of the evidence is against finding that they are in any way related to active duty service or to service connected posttraumatic stress disorder.
 
CONCLUSIONS OF LAW
 
1. From November 18, 2010 to July 28, 2014, the schedular criteria for an initial 70 percent rating for posttraumatic stress disorder were met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

2. Residuals of a right shoulder rotator cuff tear were not incurred or aggravated inservice, and they are not caused or aggravated by a service connected disorder. 38 U.S.C. §§ 1110, 1111, 1113 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).
 
3. Residuals of a left shoulder rotator cuff tear were not incurred or aggravated inservice, and they are not caused or aggravated by a service connected disorder. 38 U.S.C. §§ 1110, 1111, 1113; 38 C.F.R. §§ 3.102, 3.303, 3.310.
 
4. Residuals of a left wrist fusion injury were not incurred or aggravated inservice, and they are not caused or aggravated by a service connected disorder. 38 U.S.C. §§ 1110, 1111, 1113; 38 C.F.R. §§ 3.102, 3.303, 3.310.
 
 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
 
With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.
 
I. Increased Rating for Posttraumatic Stress Disorder
 
The Veteran contends that his posttraumatic stress disorder was more severe than the assigned ratings reflect prior to July 29, 2014.
 
Disability evaluations are determined by comparing a veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3. When the evidence is in relative equipoise, the veteran is accorded the benefit of the doubt. See 38 U.S.C. § 5107(b). 
 
A veteran's entire history is reviewed when making a disability determination. 38 C.F.R. § 4.1. When a veteran timely appeals an initial rating for a service-connected disability within one year of the rating decision, VA must consider whether the veteran is entitled to "staged" ratings to compensate him for periods of time since the filing of his claim when his disability may have been more severe than others. Fenderson v. West, 12 Vet. App. 119 (1999).
 
The Veteran's posttraumatic stress disorder is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. VA regulations establish a general rating formula for mental disabilities. See 38 C.F.R. § 4.130. Notably, the term "such as" in 38 C.F.R. § 4.130 precedes lists of symptoms that are not exhaustive, but rather serve as examples of the type and degree of symptoms and their effects that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002). Accordingly, the evidence considered in determining the level of impairment under 38 C.F.R. § 4.130 is not restricted to the symptoms listed. Instead, VA will consider all symptoms of a claimant's disability that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM -IV).
 
Diagnostic Code 9411 provides a 50 percent rating for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130.

A 70 percent rating is assigned where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.
 
A 100 percent disability rating is warranted for posttraumatic stress disorder when there are such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The Veteran's posttraumatic stress disorder is currently assigned a 50 percent disability rating from November 18, 2010 to July 28, 2014. After reviewing the evidence of record the Board finds that his posttraumatic stress disorder warranted a 70 percent rating prior to July 29, 2014, but no higher. 
 
The Veteran was afforded a VA examination in January 2012. Following that examination the examiner opined that the appellant's posttraumatic stress disorder was productive of occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. Significantly, however, the examiner noted that the Veteran suffered from a depressed mood, a constricted affect, anxiety, chronic sleep impairment and disturbances of motivation and mood. He also had difficulty establishing and maintaining effective work and social relationships, and in adapting to stressful circumstances including work and a work like setting. Moreover, notwithstanding the opinion that posttraumatic stress disorder was productive of occupational and social impairment with an occasional decrease in work efficiency the examiner also opined that the Veteran's disorder was severe and that he was unable to maintain relationships and gain meaningful employment.

The Board finds that under the doctrine of reasonable doubt the evidence warrants a 70 percent rating for posttraumatic stress disorder prior to July 29, 2014. In this regard, it is well to observe that the symptoms listed for a 70 percent rating are not exclusive. Rather they serve as examples of the type and degree of symptoms and their effects that would justify a particular rating. Mauerhan. Here the appellant's posttraumatic stress disorder was found by the January 2012 examiner to be severe, and that he was unable to maintain relationships and gain meaningful employment. While the symptoms presented did not equate to total occupational and social inadaptability, i.e., there was no evidence of symptoms such as a gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; evidence that the appellant was in persistent danger of hurting self or others; evidence of an intermittent inability to perform activities of daily living; evidence of a disorientation to time or place; and evidence of a memory loss for names of close relatives, own occupation, or own name; the examiner's opinion supports the assignment of a 70 percent rating. See Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' the Nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding ... benefits.").

II. Service connection for bilateral shoulder and left wrist disorders

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110. Generally, service connection for a disability requires evidence of: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated by service. See Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009).
 
Service connection may be granted on a secondary basis for a disability that is proximately due to a service-connected condition. 38 C.F.R. § 3.310(a). In this regard, service connection may be granted when a service-connected condition has aggravated a claimed condition, but compensation is only payable for the degree of additional disability attributable to the aggravation. Allen v. Brown, 7 Vet. App. 439 (1995). 

The Veteran claims entitlement to service connection for residuals of bilateral shoulder rotator cuff tears, and for residuals of a left wrist fusion. Specifically, he contends that his injuries were incurred after he was thrown off a vehicle during an ambush during the Vietnam War. The Veteran stated, and the evidence confirms that he was a mechanic during service. Significantly, a review of the service treatment records does not reveal any complaints, findings or diagnoses pertaining to either a shoulder or left wrist disorder. Further there is no evidence of the appellant personally engaging in combat. For the following reasons, the Board finds that service connection is not established.
 
The Veteran's statements concerning combat with the enemy implicate the "combat presumption" of 38 U.S.C. § 1154 (b). When a veteran has engaged in combat with the enemy, satisfactory lay or other evidence "shall be accepted as sufficient proof of service connection" for certain diseases or injuries, even if "there is no official record of such incurrence or aggravation in such service." Id. Section 1154(b)'s presumption may be rebutted only by clear and convincing evidence. Id.
 
Application of section 1154(b), however, requires a finding that the Veteran was engaged in combat. See Gaines v. West, 11 Vet. App. 353, 359 (1998). The Board is not required to accept a veteran's assertion that he was engaged in combat. See Cohen v. Brown, 10 Vet. App. 128, 146 (1997). "The Court has held that combat status may be determined 'through the receipt of certain recognized military citations or other supportive evidence'. . . The phrase 'other supportive evidence' serves to provide an almost unlimited field of potential evidence to be used to 'support' a determination of combat status." Gaines, 11 Vet. App. at 359.
 
The Board has the responsibility to assess the credibility of proffered evidence of record in its whole. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). In determining whether documents submitted by a veteran are credible, the Board may consider internal consistency, plausibility, and consistency with other evidence submitted on behalf of the veteran. Caluza v. Brown, 7 Vet. App. 498, 511 (1995).
 
The Veteran's service personnel records do not show any medal, decoration or badge indicative of combat service. Further, his personnel records do not show or mention combat duty. While the Veteran submitted an April 1970 Daily Staff Journal or Duty Officer's Log of the 1st Infantry Brigade 5th Infantry Division showing an ambush from an unknown enemy location, the dates of the journal preceded the Veteran's service in Vietnam by five months. The Board finds that the Veteran's contemporaneous military personnel records fail to corroborate any claim that he engaged in combat.
 
Further, even assuming the combat presumption is for consideration, the Board notes that while it can assist the Veteran in establishing the existence of an in-service injury, it does not aid in otherwise establishing a medical nexus, as further discussed below. See Libertine v. Brown, 9 Vet. App. 521, 522-23 (1996).
 
A. Rotator Cuff Tears
 
The Veteran's July 1968 service entrance examination does not reflect evidence of either a left or a right shoulder disorder. Additionally, subsequent service treatment records do not show a disease, injury or disorder pertaining to either shoulder. Lastly, the Veteran's August 1971 separation examination does not show any pertinent complaint or finding.
 
The Veteran's VA treatment records first reflect complaint of a shoulder injury in 2002, over twenty-five years after active duty service. While VA treatment records record numerous complaint of shoulder pain, there is no evidence that any shoulder disorder is related to the Veteran's military service.
 
The Veteran also claims entitlement to service connection for a bilateral shoulder tears secondary to blackouts caused by posttraumatic stress disorder. The Veteran's shoulder disorders, however, predate the diagnosis of posttraumatic stress disorder. Hence, any shoulder disorder is not shown to be caused by posttraumatic stress disorder. Further, there is no competent evidence that either shoulder was aggravated due to a fall caused by a blackout associated with posttraumatic stress disorder. Accordingly, the Board finds that the preponderance of the evidence is against finding a nexus between service and the Veteran's shoulder disorders on either a direct or secondary basis. As such, the Board concludes that service connection for both left and right shoulder disorders is denied. 
 
In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).
 
B. Left Wrist Fusion
 
A review of the service treatment records does not reveal any complaints or findings pertaining to a left wrist disorder. At the Veteran's separation from active duty his upper extremities were clinically evaluated as normal.
 
Postservice VA treatment records first reflect complaint of a left wrist injury in 2007, almost thirty years after active duty service. Significantly, there is no competent evidence that a left wrist injury is related to the Veteran's military service. While the Veteran also claims entitlement to service connection for a left wrist injury secondary to posttraumatic stress disorder, the first diagnosis of a left wrist injury predates his diagnosis of posttraumatic stress disorder. Moreover, there is no evidence showing that a left wrist disorder was aggravated by a blackout caused by posttraumatic stress disorder. Hence, entitlement to service connection for residuals of a left wrist injury secondary to posttraumatic stress disorder is not in order.
 
Accordingly, the Board finds that the preponderance of the evidence is against finding a nexus between service and any left wrist disorder. The claim is denied.
 
In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).
 
 
ORDER
 
Entitlement to a 70 percent rating for posttraumatic stress disorder prior to July 29, 2014 is granted subject to the laws and regulations governing the award of monetary benefits.
 
Entitlement to service connection for residuals of a right shoulder rotator cuff tear to include as secondary to posttraumatic stress disorder is denied.
 
Entitlement to service connection for residuals of a left shoulder rotator cuff tear to include as secondary to posttraumatic stress disorder is denied.
 
Entitlement to service connection for residuals of a left wrist fusion to include as due to posttraumatic stress disorder is denied.
 
 
REMAND
 
Posttraumatic Stress Disorder
 
The Veteran's seeks a rating higher than 70 percent from September 9, 2014 for his service connected posttraumatic stress disorder. In light of the testimony he provided at a May 2017 hearing, the Board finds that VA's duty to assist requires further development to include a new examination. 

Bilateral Pes Planus
 
The Veteran also seeks entitlement to service connection for bilateral pes planus. Initially, it is noted that a July 1968 entrance examination noted a complaint of "foot trouble." Significantly, clinical evaluation of the Veteran's feet did not identify any foot abnormalities. As such, the Veteran's feet are presumed to have been sound at enlistment.
 
An August 1975 VA examination of the Veteran's feet noted "there is no bilateral pes planus", and attributes the appellant's complaint of foot pain to callosities and corns. While indeed, there are several service treatment records noting callouses on the Veteran's feet, additional entries leave open the question whether the appellant suffered from undiagnosed bilateral pes planus while in-service. For example, a September 1970 service treatment record notes complaints of painful feet, references that the appellant had been seen three times for the same problems, and contains the note "arch support." A subsequent entry notes additional complaints about both feet, and contains a note regarding orthotics. 

The Veteran's August 1971 separation examination references painful feet from excessive walking. It is worth noting that the August 1975 VA examiner did not indicate whether they had access to the Veteran's service treatment records at the time of examination.
 
Postservice an August 2012 VA medical record documents a current diagnosis of pes planus.
 
In light of the foregoing, the Board is of the opinion that further development is warranted to determine the etiology of the Veteran's bilateral pes planus. 

Individual unemployability

In light of the findings made by the January 2012 examiner and comments made by the appellant concerning his employment history the Board finds that the issue of entitlement to a total disability evaluation based on individual unemployability is before the Board. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

Accordingly, this issue is REMANDED for the following action:
 
1. Obtain all outstanding, pertinent VA and private treatment records concerning treatment for posttraumatic stress disorder dating since July 29, 2014, as well as treatment records pertaining to a foot disability. All records received should be associated with the claims file. If the RO cannot locate such records, the RO must specifically document the attempts that were made to locate them, and explain in writing why further attempts to locate or obtain any government records would be futile. The RO must then: (a) notify the claimant of the specific records that it is unable to obtain; (b) explain the efforts VA has made to obtain that evidence; and (c) describe any further action it will take with respect to the claims. The claimant must then be given an opportunity to respond.
 
2. Thereafter schedule the Veteran for a VA examination with a podiatrist to obtain an opinion regarding the etiology of his bilateral pes planus. The examiner is to be given access to the Veteran's VBMS and Virtual VA files, as well as a copy of this remand. Following the examination the examiner must opine whether it is at least as likely as not that any acquired foot disorder to include pes planus is related to service. 

A complete, well-reasoned rationale must be provided for any opinion offered. If the requested opinion cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge, i.e., no one could respond given medical science and the known facts, or by a deficiency in the record or the examiner, i.e., additional facts are required, or the examiner does not have the needed knowledge or training.

3. Schedule the Veteran for a VA psychiatric examination. The examiner is to be given access to the Veteran's VBMS and Virtual VA files, as well as a copy of this remand. In accordance with the latest worksheets for rating posttraumatic stress disorder, the examiner is to provide a detailed review of the appellant's pertinent medical history, current complaints, and the nature and extent of any disability due to posttraumatic stress disorder. The examiner must address whether there has been an increase in severity since the VA examination in July 2014 and, if so, the approximate date of the increase in severity.
 
A complete, well-reasoned rationale must be provided for any opinion offered. If further examination is in order, that examination must be conducted. If the requested opinion cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge, i.e., no one could respond given medical science and the known facts, or by a deficiency in the record or the examiner, i.e., additional facts are required, or the examiner does not have the needed knowledge or training.

4. Then, after ensuring that the duty to assist has been fulfilled readjudicate the claims, and adjudicate the claim of entitlement to a total disability evaluation based on individual unemployability. If any claim is denied issue a supplemental statement of the case and afford the appellant a reasonable period of time within which to respond. 
 
The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).
 
This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs