# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1014

JEFFERY A. WELLS,                                                          APPELLANT,

    V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS,                                            APPELLEE.

Before KRAMER, *Chief Judge*, and FARLEY, IVERS, STEINBERG,
GREENE, KASOLD, and HAGEL, *Judges*.

## O R D E R

On November 3, 2003, the appellant, through counsel, filed a motion for an initial decision by the full Court. He argues that full-Court consideration is necessary because the appeal presents the opportunity to consider all aspects of the amendments to the Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820 (2002).

Motions for a full-Court decision are not favored. Ordinarily they will not be granted unless such action is necessary to secure or maintain uniformity of the Court's decisions or to resolve a question of exceptional importance. *See* U.S. VET. APP. R. 35(c). In this matter, the appellant has not shown that either basis exists to warrant a full-Court decision.

Upon consideration of the foregoing, it is

ORDERED that the appellant's motion for an initial decision by the full Court is denied.

DATED: May 11, 2004                                    PER CURIAM.

STEINBERG, *Judge*, dissenting: I voted for the appellant's motion for initial en banc consideration of this case in order for the full Court to address issues of exceptional importance raised by the appellant (in the brief he submitted in October 2003) regarding the effect of section 401 of the Veterans Benefits Act of 2002 (VBA), Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832, and especially for the full Court to examine collectively the Court's decisions in *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), *Roberson v. Principi*, 17 Vet.App. 135 (2003) (*Roberson III*), and *Mariano v. Principi*, 17 Vet.App. 305 (2003), in light of the enactment of VBA § 401. *See* U.S. VET. APP. R. 35(c) (providing that full-Court consideration "[o]rdinarily . . . will not be granted unless such action is necessary to secure or maintain uniformity of the Court's decisions or to resolve a question of exceptional importance").

# I. Background: *Roberson III*

The VBA amendments were enacted in December 2002. In June 2003, the Court issued a per curiam order in *Roberson III*, which involved an inferred claim, for a Department of Veterans Affairs (VA) rating of total disability based on individual unemployability (TDIU), that the Court concluded "ha[d] never been addressed by [a VA regional office (RO)] or the Board of Veterans' Appeals (Board or BVA)]", and that the Court thus remanded for initial consideration by the Board. *Roberson III*, 17 Vet.App. at 148. In *Roberson III*, the Court made only two holdings as to matters before it on appeal: (1) That the Court was bound by the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001), which reversed this Court's decision that that appellant's prior claim for service connection had not raised a claim for a TDIU rating and (2) that, because there was no VARO or BVA decision to review on the claim for a TDIU rating, "we must decline the appellant's invitation to run roughshod over the VA's adjudication process" by "adjudicat[ing] the matter in the first instance." *Roberson III*, *supra*. Based on these holdings, the Court remanded "the matter of the appellant's eligibility for [a] TDIU [rating] . . . to the Board", *ibid.*, after first concluding that the Court had jurisdiction over the unadjudicated TDIU-rating claim because it was "expressly presented to the RO and the Board", *id.* at 138.

Although the Court in *Roberson III* had limited jurisdiction over the TDIU-rating claim (insofar as it could have **remanded** it for the Board to **refer** it to the RO[1]), the Court lacked jurisdiction to reach the **merits** of that claim because the Board had never addressed it and it was never placed in appellate status before the Board by a Notice of Disagreement (NOD) that disagreed either with the RO's adjudication of that claim or the RO's failure to adjudicate it. *See* 38 U.S.C. § 7105(a) (providing that BVA review initiated by an NOD); *Buckley v. West*, 12 Vet.App. 76, 82 (1998) (concluding that Board's jurisdiction "derives from a claimant's NOD"); *Velez v. West*, 11 Vet.App. 148, 157 (1998) (recognizing that NOD is valid if it expresses "disagreement with an RO's . . . failure to adjudicate [a] claim" raised to RO); *Hazan v. Gober*, 10 Vet.App. 511, 516 (1997) (same); *Isenbart v. Brown*, 7 Vet.App. 537, 541 (1995) (same). This Court's reliance in *Roberson III* on *Fenderson v. West*, 12 Vet.App. 119 (1999), and *Holland v. Gober*, 10 Vet.App. 433 (1997) (per curiam order), for the Court's assertion of jurisdiction was misplaced because in both of those cases there **were** NODs as to the claims unadjudicated by the Board. *Roberson III*, 17 Vet.App. at 138. Unlike in *Fenderson and Holland*, the Court in *Roberson III*, in order to correct the Board's error in failing to consider the TDIU-rating claim, should simply have remanded the claim to the BVA for it to refer the matter to the RO, because on remand the Board would not have had any jurisdiction to adjudicate that TDIU-rating claim; the Board's jurisdiction would allow it merely to refer that claim – not then in appellate status before the Board – to the RO.[2]

---

[1] *See Bruce v. West*, 11 Vet.App. 405, 408 (1998); *Godfrey v. Brown*, 7 Vet.App. 398, 408-09 (1995); *cf. Manlincon v. West*, 12 Vet.App. 238, 240-41 (1999) (remanding, where claim was in appellate status before Board of Veterans' Appeals (BVA or Board), claim unadjudicated by BVA and Department of Veterans Affairs (VA) regional office (RO) for BVA to **remand** to VARO).

[2] *See supra* note 1.

Thus, the Court in *Roberson III*, having determined that it could not exceed "the authority and primary responsibility of this Court . . . to review Board decisions", *Roberson III*, 17 Vet.App. at 148, had no basis for addressing the appellant's contention that the Court should adjudicate the inferred TDIU-rating claim in the first instance – that argument was rendered moot by the former determination.[3] The *Roberson III* Court's extensive examination of the meaning and interpretation of the effect of VBA § 401, primarily in terms of its effect on how this Court reviews BVA decisions on the merits, *Roberson III*, 17 Vet.App. at 138-48, must therefore be considered dicta.[4] However, in *Mariano* this Court subsequently held, as *Roberson III* had concluded, *id.* at 146, that under VBA § 401 our standard of review regarding BVA factfinding continued to be the "clearly erroneous" standard, 38 U.S.C. § 7261(a)(4), and that "[t]he outcome of the Board's application of the section 5107(b) equipoise standard is a factual determination that this Court reviews under [that] 'clearly erroneous' standard." *Mariano*, 17 Vet.App. at 313; *see also Mitchell v. Principi*, __ Vet.App. __, __, No. 01-1659, 2004 WL 742106, at *1-2 (Apr. 7, 2004) (per curiam order) (Kramer, C.J., concurring) (reiterating holding from *Mariano*, *supra*). That is where I believe the Court's caselaw is to date in terms of the effect of VBA § 401. What has not yet been made clear, however, is exactly how (by what criteria) the Court should review the Secretary's application of the section 5107(b) equipoise standard. Because I believe that VBA § 401 was enacted to and did effect a substantial change from prior law, I voted to grant full-Court consideration to this case in order to address this matter of exceptional importance as to which our caselaw is much in need of clarification. *See* VET. APP. R. 35(c). My conclusions on this matter follow.

---

[3] The Court's decision in *Roberson v. Principi*, 17 Vet.App. 135 (2003) (*Roberson III*) to address the amendments made by section 401 of the Veterans Benefits Act of 2002 (VBA), Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832, was also problematic because the Court had received virtually no briefing from the Secretary on the questions that it addressed regarding the VBA amendments, largely because the Secretary had (in my view, correctly) concluded that the Court could not properly reach those issues and because he (also, in my view, correctly) had asserted that the amendments could not affect the standard of review in the Court over Board decisions denying claims of clear and unmistakable error. *Roberson III* Secretary's Brief at 13-15.

[4] It appears that the panel had reservations about the correctness of the policy judgment that would underlie any effort by Congress to change this Court's standard of judicial review: Specifically, at the end of its analysis, immediately before rejecting "the appellant's argument that the VBA somehow altered the landscape of judicial review", the *Roberson III* panel stated:

> If [Congress] decides that the record produced by a non-adversarial claims adjudication process is, in its judgment, inadequate, then it can sharpen that process by making it adversarial through elimination of the attorney fee prohibition during claim development and adjudication. Merely changing this Court's standard of review while doing nothing to enhance the record would compound rather than correct any problems.

*Roberson III*, 17 Vet.App. at 174. Moreover, the *Roberson III* Court refers to Congress' having "amended section 7261(b) [by] adding an ***entreaty*** to the Court to 'take due account of the Secretary's application of [38 U.S.C. § ]5107(b).'" *Roberson III*, 17 Vet.App. at 140. An entreaty, however, is "an earnest request; supplication; prayer", WEBSTER'S NEW WORLD DICTIONARY 454 (3d ed. 1998), whereas in the amended section 7261(b)(1) Congress ***mandated*** ("shall") that the Court carry out this new review. 38 U.S.C. § 7261(b)(1).

3

## II. VBA Amendments
### A. Text of Statute

Section 401 of the VBA, effective December 6, 2002, amended 38 U.S.C. § 7261(a)(4) and (b)(1). VBA § 401. Prior to the VBA, our caselaw provided (1) that the Court was authorized to reverse a Board finding of fact only where "the only permissible view of the evidence [of record] is contrary to that found by the BVA", *Johnson (Brenda) v. Brown*, 9 Vet.App. 7, 10 (1996), i.e., supports the appellant's position, and (2) that a Board finding of fact must be affirmed where "there is a 'plausible basis' in the record" for the Board's determination, *Hurd v. West*, 13 Vet.App. 449, 451 (2000). *See also Harder v. Brown*, 5 Vet.App. 183, 189 (1993) (citing *Karnas v. Derwinski*, 1 Vet.App. 308, 311 (1991)); *Barnhill v. Brown*, 5 Vet.App. 75, 77 (1993).

As a result of VBA § 401's amendments to section 7261(a)(4), the Court is now directed to "hold unlawful and set aside *or reverse*" any "finding of material fact *adverse to the claimant* . . . if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4), as amended by VBA § 401(a) (emphasis indicates VBA amendments). Furthermore, new section 7261(b)(1) now provides in entirely new language added to that subsection:

> (b) In making the determinations under subsection (a), the Court shall review the record of proceedings before the Secretary and the [BVA] pursuant to [38 U.S.C. § ]7252(b) of this title[ 38] and shall –
>
> (1) take due account of the Secretary's application of section 5107(b) of this title . . . .

38 U.S.C. § 7261(b)(1). The Secretary's obligation under section 5107(b), as referred to in section 7261(b)(1), is as follows:

> (b) BENEFIT OF THE DOUBT. – The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

38 U.S.C. § 5107(b). In *Gilbert*, the Court characterized the benefit-of-the-doubt rule (then found in 38 U.S.C. § 3007(b)) as mandating that "when . . . the evidence is in relative equipoise, the law dictates that [the] veteran prevails" and that, conversely, a VA claimant loses only when "a fair preponderance of the evidence is against the claim." *Gilbert*, 1 Vet.App. at 54-55; *see also Shoffner v. Principi*, 16 Vet.App. 208, 215 (2002) (citing *Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001), for proposition that "[Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096] did not change [the section 5107(b)] benefit-of-the-doubt doctrine").

4

Reading amended sections 7261(a)(4) and 7261(b)(1) together, which must be done in order to determine the effect of the VBA § 401 amendments, this Court is now directed, for the first time as part of its scope-of-review responsibility under section 7261(a)(4), to undertake three new actions in deciding whether BVA factfinding adverse to a claimant is clearly erroneous and, if so, what the Court should hold as to that factfinding. *See Reno v. Koray*, 515 U.S. 50, 56-57 (1995) (construing statutory language in context of statutory scheme); *Kilpatrick v. Principi*, 16 Vet.App. 1, 7 (2002) (examining entire statutory scheme in interpreting meaning of statute), *aff'd*, 327 F.3d 1375 (Fed.Cir. 2003). Specifically, the plain meaning of the amended subsections (a)(4) and (b)(1) requires the Court (1) to review all evidence "before the Secretary and the Board", 38 U.S.C. § 7261(b); (2) to consider "the Secretary's application of" the benefit-of-the-doubt rule in view of that evidence, 38 U.S.C. § 7261(b)(1); and (3) if the Court, after carrying out actions (1) and (2), concludes that an adverse BVA finding of fact is clearly erroneous and therefore unlawful, to decide whether to set it aside or reverse it, 38 U.S.C. § 7261(a)(4).

## B. Historical Context

The significance and effect of the three new actions that the Court has been directed or authorized (in the case of reversal) to undertake is best understood in the historical context of the Court's exercise of its scope of review. Prior to the enactment of VBA § 401, the Court was permitted by section 7261(a)(4) only to "set aside" a "clearly erroneous" BVA finding of fact. *See Veterans' Judicial Review Act (VJRA)*, Pub. L. No. 100-687, § 301(a), 102 Stat. 4105, 4115 (1988) (enacting 38 U.S.C. § 4061(a)(4), renumbered as section 7261(a)(4)). Almost from this Court's inception, its review of findings of fact under the "clearly erroneous" standard had been construed as "parallel . . . [to] the standard used by [U.S.] Courts of Appeals in reviewing findings of material fact made by [U.S.] District Courts," *Gilbert*, 1 Vet.App. at 52; *see* FED. R. CIV. P. 52(a) (providing, at time of VJRA's enactment and presently, that courts of appeals review district court findings of fact under "clearly erroneous" standard). The Court characterized this standard as meaning that "if there [wa]s a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we c[ould] not overturn them", *Gilbert*, 1 Vet.App. at 52-53 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985), and *Danville Plywood Corp. v. United States*, 899 F.3d 3 (Fed. Cir. 1990)). As discussed in part II.E, below, however, this formulation of the "clearly erroneous" standard seems at its inception to have strayed from the formula applied in traditional Article III appellate review as articulated by the Supreme Court in the three cases on which *Gilbert* purported to rely. In any event, more recently but prior to the VBA, the Federal Circuit in *Hensley v. West* expounded as follows on this Court's standard of review as enacted in the VJRA:

> On factual matters, the findings of the BVA may be overturned by the Court of Appeals for Veterans Claims only if they are clearly erroneous. *See* 38 U.S.C. § 7261(a)(4). . . . Furthermore, "in no event shall findings of fact made by the Secretary or [BVA] be subject to trial de novo by the Court [of Appeals for Veterans

Claims]." 38 U.S.C. § 7261(c). The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding.

*Hensley*, 212 F.3d 1255, 1263 (Fed. Cir. 2000).

Under new section 7261(a)(4), in addition to the longstanding pre-VBA direction to the Court to "set aside" a "clearly erroneous" finding, the Court is expressly permitted to ***"reverse"*** such an adverse factfinding. As the ensuing discussion illustrates, the VBA § 401 amendments to section 7261(a)(4) and (b) have fundamentally altered this Court's BVA-factfinding scope of review, as evidenced by both the plain meaning of the amended language of these subsections as well as the unequivocal legislative history of the amendments.

## *C. Examination of New Statutory Language*

In examining the text of the § 401 amendments, I turn first to the addition in section 7261(a)(4) of "or reverse" as to BVA factfinding that is "adverse to the claimant", one of the three new actions directed or authorized to be undertaken by the Court pursuant to amended section 7261. As a general rule of statutory construction, meaning must be attributed to each amendment made by Congress: "The [Supreme] Court has often said that 'every clause and word of a statute' should, 'if possible,' be given 'effect.'"[5] The plain meaning of the language used, "reverse", signifies a major shift for the Court's review of BVA factfinding. Although section 7252(a) has included, since the enactment of the VJRA in 1988, general authority for the Court to "reverse" a Board decision, VJRA § 301(a), 102 Stat. at 4113 (enacting 38 U.S.C. § 4052(a), now section 7252(a) ("the Court shall have power to affirm, modify, or reverse a decision of the Board")), it appears (in light of *Hensley, supra*) that that authority could have pertained to reversal solely where factfinding was not required, i.e., where reversal was required as a matter of law.[6] Whereas "setting aside" a finding of fact is discarding or invalidating it and allowing the agency or court from which the appeal is heard to readjudicate the issue, "reversing" a finding of fact is to ***change*** it.[7] Furthermore, consistent with the proclaimant nature of the VA adjudication system,

---

[5] *Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-539 (1955), and *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883) ("[i]t is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed")); *see Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879), for

proposition that "[a]s early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'").

[6] *See Taylor* and *Andrulonis, infra* note 7.

[7] This distinction is well presented in *Icicle Seafoods, Inc. v. Worthington* (on which the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) had relied in *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000)), where the Supreme Court described the general, traditional role of Article III appellate-court review (which, of course, is not

6

*see Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998), and the availability of appeal to this Court only by the appellant, *see* 38 U.S.C. § 7252(a), Congress in VBA § 401 provided the authority to "reverse" (or "set aside") only those findings that are "adverse to the claimant".[8] Moreover, as set forth below, the legislative history bolsters the plain meaning of the statute by making clear that Congress intended for the Court to take a more proactive and less deferential role in its BVA-factfinding review. *See infra* notes 15-18 and accompanying text.

As to new section 7261(b)'s requirement that this Court "review the record of proceedings", that provision further supports the conclusion that VBA § 401 brought about a major expansion of this Court's responsibilities as to review of BVA factfinding. 38 U.S.C. § 7261(b) ("In making the determinations under subsection (a) of this section, the Court shall review the record of proceedings before the Secretary and the [BVA] pursuant to section 7252(b)."). The "record of proceedings" referred to in new section 7261(b)(1) is the record on appeal (ROA) designated by the parties and transmitted to the Court pursuant to Rules 10 and 11 of this Court's Rules of Practice and Procedure. *See Homan v. Principi*, 17 Vet.App. 1, 3-4 (2003) (per curiam order). Although **section 7252(b)** has always provided that "[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board", the Federal Circuit in *Hensley* implicitly held that our review under section 7261(b) was limited to the evidence **used** by the Board. *Hensley*, 212 F.3d at 1264; *see also Winters v. Gober*, 219 F.3d 1375, 1380 (Fed. Cir. 2000) (holding that Court had exceeded its statutory authority and prejudiced appellant by deciding case on grounds "not relied on" by Board that may have required "improper de novo findings of fact"). The addition of that requirement to section 7261(b), in light of *Hensley*, signals that the Court's review should be based on **all** the evidence before the Board, rather than just the evidence **used** by the Board and suggests a congressional

---

carried out pursuant to the same standard of review made applicable to this Court by the VBA § 401 amendments to section 7261(a)(4) and (b)(1)):

> If the Court of Appeals . . . was of the view that the findings of the District Court were "clearly erroneous" . . . , it could have **set them aside** on that basis. If it believed that the District Court's factual findings were unassailable, but that the proper rule of law was misapplied to those findings, it could have **reversed** the District Court's judgment. But it should not simply have made factual findings on its own.

*Icicle Seafoods*, *Inc.*, 475 U.S. 709, 714 (1986) (emphasis added). *Compare, e.g., Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will **set aside** the agency's action and remand the case – even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason." (emphasis added)), *with Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (**reversing** district court decision and **ordering district court to grant** summary judgment to party), *and Andrulonis v. United States*, 26 F.3d 1224, 1236 (2d Cir. 1994) (**reversing** part of district court decision that awarded payment of interest through March 11, 1991, and "**direct[ing] the district court to award** interest through February 13, 1992" (emphasis added)).

[8] *Cf. Morgan v. Principi*, 16 Vet.App. 228, 232 (2002) ("Neither this Court nor the . . . Federal Circuit has held whether this Court can disturb a favorable Board determination.").

rejection of both *Hensley* and *Winters*. *See infra* note 17 and accompanying text (discussing legislative history suggesting *Hensley* was overruled by VBA § 401).[9]

Finally, the effect of the addition to the Court's scope-of-review authority in section 7261 of a ***direction*** ("shall review") to this Court to "review the record of proceedings before the Secretary and the Board . . . pursuant to section 7252(b)" can be fully understood only in the context of the specific mandate in section 7252(b) that "[t]he extent of [this Court's] review shall be limited to the scope provided in section 7261." 38 U.S.C. § 7252(b); *see Mayer v. Brown*, 37 F.3d, 618, 620 (Fed. Cir. 1994) (stressing separate purposes of section 7252(b) and section 7261), *overruled on other grounds by Bailey (Harold) v. West*, 160 F.3d 1360 (Fed. Cir. 1998). That is, section 7252(b) says in effect that unless a matter is set forth in section 7261, that matter is not part of the Court's scope of review; the VBA § 401(b) amendment to section 7261(b) now meets that criterion.[10]

---

[9] I do not understand how the Court could ***reverse*** (as distinguished from setting aside) a finding of material fact without in some fashion finding facts itself based on evidence of record and, hence, I conclude that, by virtue of this new statutory authority, *Hensley, supra,* no longer applies to prevent this Court from reversing under section 7261(a)(4) and, in some manner, weighing evidence in order to take due account of the Secretary's application of the equipoise rule as well as, under section 7261(b)(2), to take due account of the rule of prejudicial error. In this regard, the list of precedential cases, cited by the Court in *Roberson III*, 17 Vet.App. at 140, in which the Court had previously reversed BVA factfinding divides into two categories: (1) Those cases preceding *Hensley* that were not bound by its no-factfinding rule and (2) the two cases issued post-*Hensley*, namely *Pentecost v. Principi* and *Harth v. West*. *Harth*'s reversal was based on a de novo application of the law to the facts in order to find well grounded a service-connection claim for post-traumatic stress disorder (PTSD), *Harth,* 14 Vet.App. 1, 5-6 (2000), and the opinion does not mention section 7261(a)(4). *Pentecost*'s reversal (although section 7261(a)(4) is referred to) is also as to a PTSD claim and seems to be based on the Board's too-strict reading of both the stressor-corroboration requirement in 38 C.F.R. § 3.304(f) (1999) and the "controlling precedent" of *Suozzi v. Brown*, 10 Vet.App. 307 (1997). *Pentecost,* 16 Vet.App. 124, 128-29 (2002) (quoting *Suozzi,* 10 Vet.App. at 311, in which the Court had "rejected" a narrow definition of "corroboration" that would require "corroboration of every detail[,] including the appellant's personal participation").

[10] About this section 7261(b)(1) insertion, the *Roberson III* order stated:

> The Secretary's application, or lack thereof, of the benefit[-]of[-]the[-]doubt rule is part of any decision of the Board, and was therefore already within the Court's review power under [38 U.S.C. §] 7252(a). The command that the Board "shall review the record of proceedings before the Secretary and the Board . . . pursuant to section 7252(b)" wraps the statutory text around on itself. Section 7252(b) states, in pertinent part, that "[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board" and that "[t]he extent of the review shall be limited to the scope provided in section 7261." In other words, section 7261 states that the Court shall review the record of proceedings which in turn states that such review is limited by section 7261. Review is thus trapped between these two mutually referential provisions, which is to say that there is no clear reading of this provision.

*Roberson III*, 17 Vet.App. at 140. I must confess not to find any such "wrap[ping] . . . around" or "trapp[ing]" of review. Although section 7252(b)'s pre-VBA direction that the Court review the "record of proceedings" included, in a general way, the Board's consideration of the equipoise standard, the direct command in new section 7261(b) that the Court, in completing its review, "take due account of the Secretary's ***application*** of section 5107(b)" has made a meaningful change to our scope of review. 38 U.S.C. § 7261(b)(1) (emphasis added). The first matter under section 7252(a) is a

8

Perhaps the most dramatic of the three Court actions directed or authorized by VBA § 401 is the ***mandate*** that the Court "take due account of the Secretary's application of section 5107(b)", which, for many years preceding the enactment of the VJRA, had been known as the "benefit-of-the-doubt rule".  38 U.S.C. § 7261(b)(1).  The "application of section 5107(b)" in VBA § 401, refers to the question whether "there is an approximate balance of positive and negative evidence" – a criterion that has been known since *Gilbert* as the "equipoise rule" but is more aptly called the "equipoise standard", *see Mariano,* 17 Vet.App. at 313.  Prior to the enactment of the VBA and at the time of *Gilbert*, *supra*, the scope-of-review provisions enacted in section 4061 (now section 7261) by the VJRA in 1988 made no reference whatsoever to section 3007(b) (the predecessor of current section 5107(b)) but, rather, referred to review of BVA factfinding ***only*** in terms of the "clearly erroneous" standard.  In light of the lack of specificity in those VJRA-enacted provisions, the Court in *Gilbert* had a sound basis for applying a deferential formulation of the "clearly erroneous" standard and for concluding, in essence, that the Court's review of the Board's compliance with then-section 3007(b) was limited to whether the Board had provided an adequate statement of reasons or bases (under 38 U.S.C. § 4004(d)(1) (now 38 U.S.C. § 7104(d)(1))) for its conclusion that the evidence preponderated against the claim or against the claimant's position on a finding of material fact.  *Gilbert*, 1 Vet.App. at 58 ("[w]here findings of material fact by the Board are properly supported and reasoned, and the Board concludes that a fair preponderance of the evidence weighs against the claims of a veteran, it would not be error for the Board to deny the veteran the benefit of the doubt").  Although the Court later intensified its reasons-or-bases scrutiny somewhat in *Williams (Willie) v. Brown*, that scrutiny did not include an evaluation of how the Board actually applied the equipoise standard but only how it ***said*** it had applied it.  *Williams (Willie)*, 4 Vet.App. 270, 273-74 (1993) ("[i]n a case where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise").[11]  It is against this rather relaxed standard of review that, through VBA § 401, Congress has now required the Court to review the entire ROA and to examine the Secretary's determination as to whether the evidence presented was in equipoise on a particular material fact.[12]

matter of jurisdiction and the latter matter under section 7261(b) defines ***how*** the Court will conduct review within its jurisdiction.  Furthermore, that new section 7261(b) directive must be read in the context of the full section 7261(a), which commands such "tak[ing]" account" in the ***context of evaluating*** BVA findings – including whether adverse findings of fact are clearly erroneous.  As explained in the text immediately following this footnote, I believe that section 7261(b) requires the Court to ***review*** the Secretary's application under that same "clearly erroneous" standard; that requirement surpasses that imposed by the broad language of section 7252(a), which does not mention section 5107(b) by name and which speaks only to what matters are included in the Court's jurisdiction to review.

[11] *See also Jackson v. West*, 12 Vet.App. 422, 425, 429 (1999) (applying *Williams (Willie) v. Brown*, 4 Vet.App. 270, 273-74 (1993)); *Gaines v. West*, 11 Vet.App. 353, 359 (1998) (same).

[12] *See infra* note 17 and accompanying text (legislative history clarifying that VBA § 401 amendments with respect to the benefit-of-the-doubt rule require Court to provide less deferential and more searching review of Board decisions and stating that that rule will, under VBA § 401, be given "full force"); *cf.* Gregory C. Sisk, *The Trial [sic] Courts of the Federal Circuit; Diversity by Design*, 13 Fed. Cir. B.J. 241, 263 (2004) ("the actual textual changes to the statute enacted . . . [in the VBA] appear to mandate moderate but nonetheless meaningful adjustment by [this Court] on a case-by-case basis, rather than revolutionary change[;] . . . a fundamental principle of statutory interpretation is that

In light of this background, it appears that this new mandate supercedes the conclusion in *Gilbert* that we were to review the Board's application of the equipoise standard to determine whether that application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", pursuant to section 7261(a)(3)(A) (then section 4061(a)(3)(A) (1988)). *Gilbert*, 1 Vet.App. at 57-58. Specifically, by inserting into section 7261(b)(1) the direction that the Court evaluate the Board's application of the equipoise standard to findings of material fact, Congress seems to have been suggesting that the section 7261(a)(4) "clearly erroneous" standard of review should be applied as to that evaluation.[13] As indicated in part I, above, the Court so concluded in *Mariano*:

> The outcome of the Board's application of the section 5107(b) equipoise standard is a factual determination that this Court reviews under the "clearly erroneous" standard. *See Roberson*, 17 Vet.App. at 146 ("[The Court] is not authorized to make the determination as to whether the evidence is in equipoise and apply the benefit[-]of[-]the[-]doubt doctrine; the Court is empowered only to ensure that the Secretary's determination in that regard is not clearly erroneous."). Indeed, Congress, by adding section 7261(b)(1), directed that the Court, "[i]n making the determinations under subsection (a)," including a determination as to whether a finding of material fact adverse to the claimant is clearly erroneous, shall take due account of the Secretary's application of section 5107(b)'s equipoise standard. 38 U.S.C. § 7261(b)(1); *see* 38 U.S.C. § 7261(a)(4).

*Mariano*, 17 Vet.App. at 313.[14]

---

a change in statutory language presumptively effects a change in meaning").

[13] The *Roberson III* assertion that "[t]he Secretary's application, or lack thereof, of the benefit[-]of[-]the[-]doubt rule . . . was . . . already within the Court's review power under section 7252(a)" does not take into consideration the difference between that which is permissible and that which is now mandated ("shall"), according to the two Veterans' Affairs Committees, to provide for "more searching appellate review of BVA decisions" in order to give "full force to the 'benefit of the doubt' provisions." 148 CONG. REC. S11337, H9003 (daily ed. Nov. 18, 2002). If the Court had always given such "due regard", it would seem that the *Roberson III* order would cite some precedent on that point, but it does not (perhaps because that "regard" has been, since *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), only a reasons-or-bases check, *see supra* text accompanying note 11).

[14] Further, our review of Board decisions under this standard and the direction to this Court to engage in a limited form of factfinding in reviewing the Board's factfinding should be a double-edged sword: In reviewing the record before the Secretary and the Board, the Court is not only empowered, by section 7261(a)(4) and (b)(1), to reverse a clearly erroneous finding of fact, but is also directed, by section 7261(b)(2), to affirm a Board decision with an error that is rendered nonprejudicial because the evidence is so overwhelmingly against the claim in question that a remand based on that error would be superfluous. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991); *see also Valiao v. Principi*, 17 Vet.App. 229, 232 (2003) ("Where the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision, the case should not be remanded for development that could not

### D. VBA Legislative History

The legislative history supports the plain meaning of these provisions discussed in part II.C, above, by strongly evidencing the intent of Congress to bring about decisive change in the scope of this Court's review of BVA factfinding.[15] That legislative history is set forth at this point essentially in full. The House and Senate Committees on Veterans' Affairs described the new provisions enacted by VBA § 401 as follows in an Explanatory Statement that they prepared regarding their compromise agreement:

*Senate bill*

Section 501 of S. 2237 would amend section 7261(a)(4) . . . to change the standard of review [the U.S. Court of Appeals for Veterans Claims (CAVC)] applies to BVA findings of fact from "clearly erroneous" to "unsupported by substantial evidence." Section 502 would also cross-reference section 5107(b) in order to emphasize that the Secretary's application of the "benefit of the doubt" to an appellant's claim would be considered by CAVC on appeal.

*House bill*

The House Bills contain no comparable provision.

*Compromise agreement*

Section 401 of the Compromise Agreement ***follows the Senate language*** with the following amendments.

---

possibly change the outcome of the decision.").

[15] The legitimacy of using legislative history as a method of assisting in finding the meaning of statutory provisions whose meaning is not free from doubt is well established. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 376 n.9 (2000) (relying on statements by sponsors of act to support conclusion as to statutory construction); *id.* at 378 n.13 (same); *id.* at 382 n.17 (same); *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1192 (9th Cir. 1998) (criticizing U.S. Court of Appeals for the Fourth Circuit for "ignor[ing] the reasoning of eight Justices on the subject of statutory analysis, [and] rely[ing instead] on a separate opinion by Justice Scalia, and partially on the basis of that reasoning decid[ing] to disregard the legislative history"); *Oregon v. Ashcroft*, 192 F. Supp. 2d 1077, 1089 (D. Or. 2002) ("'The legitimacy of legislative history as a means of interpreting statutes, at least when they are unclear, is, rightly or wrongly, well established. Other than Justice Thomas, no Justice seems interested in adopting Justice Scalia's rejection of legislative history or his rejection of the notion of legislative intent.'" (quoting William Funk, *Review Essay Faith in Texts - Justice Scalia's Interpretation of Statutes and the Constitution: Apostasy for the Rest of Us?*, 49 ADMIN. L. REV. 825 (1997)). It is interesting, nonetheless, that the *Roberson III* order, 17 Vet.App. at 141, cites Justice Scalia's concurring opinion in *Crosby*, 530 U.S. at 390, rather than the majority opinion there, cited at the outset of this footnote.

The Compromise Agreement would modify the standard of review in the Senate bill in subsection (a) by deleting the change to a "substantial evidence" standard. It would modify the requirements of the review the Court must perform when it is making determinations under section 7261(a) . . . . Since the Secretary is precluded from seeking judicial review of decisions of the [BVA], the addition of the words "adverse to the claimant" in subsection (a) is intended to clarify that findings of fact favorable to the claimant may not be reviewed by the Court. Further, the addition of the words "or reverse" after "and set aside" is intended to emphasize *that the Committees expect the Court to reverse clearly erroneous findings when appropriate, rather than remand the case.*

New subsection (b) [of section 7261] would maintain language from the Senate bill that would *require the Court to examine the record* of proceedings *before the Secretary and BVA* and the *special emphasis during the judicial process on the benefit of the doubt provisions of section 5107(b) as it makes findings of fact in reviewing BVA decisions.* This would not alter the formula of the standard of review on [sic] the Court, with the uncertainty of interpretation of its application that would accompany such a change. *The combination of these changes is intended to provide for more searching appellate review of BVA decisions, and thus give full force to the "benefit of doubt" provision.*

148 CONG. REC. S11337, H9003 (daily ed. Nov. 18, 2002) (emphasis added) (Explanatory Statement printed in Congressional Record as part of debate in each body immediately prior to final passage of compromise agreement).

At the time of final action on S. 2237, the bill that was ultimately enacted as the VBA, VBA § 401 was quite extensively explained by Senator Rockefeller, who was the Chairman of the Senate Committee, the floor manager of the bill in the Senate, and the principal author of VBA § 401.[16] In explaining VBA § 401, he emphasized, as did the two Committees in their Explanatory Statement, 148 CONG. REC. S11337, H9007, that "the combination of" the new requirements that the Court "examine the . . . [ROA]", consider the benefit-of-the-doubt rule, and "make[] findings of fact in reviewing BVA decisions" is "intended to provide for *more searching appellate review of BVA*

---

[16] Amendments to section 7261 (dealing with all the same elements as did VBA § 401) were included in S. 2079 as introduced by Senator Rockefeller on April 9, 2002. S. 2079, 107th Cong., 2d Sess., § 2. The special responsibilities of a Committee Chairman in explaining a bill emanating from that committee have been recognized even by the Supreme Court's greatest skeptic as to the utility of legislative history. *Conroy v. Aniskoff*, 507 U.S. 511, 521-22 (1993) (Scalia, J., concurring in the judgment) ("This comment cannot be dismissed as the passing remark of an insignificant Member, since the speaker was the Chairman of the House Judiciary Committee, the committee that reported the bill to the House floor.").

*decisions* and thus *give full force* to the 'benefit[-]of[-]the[-]doubt' provision." 148 CONG. REC. S11334 (emphasis added). Chairman Rockefeller concluded that the Court should "reverse clearly erroneous findings when appropriate, rather than remand the case", and declared that the "new language in section 7261 would overrule . . . *Hensley*."[17] 148 CONG. REC. S11334. His statement is particularly significant (1) because only the Senate had passed provisions to amend the Court's section 7261 scope-of-review provisions (in S. 2237),[18] and the Committees on Veterans' Affairs explained that VBA § 401 generally "follows the Senate language", and (2) because there is no legislative history that is inconsistent with his statement. 147 CONG. REC. S11337, H9003. Representative Evans, the ranking minority member of the House Committee, spoke "in strong support of the bill S. 2237" and explained that "the bill . . . clarifies the authority of the Court of Appeals for Veterans Claims to *reverse* decisions of the [BVA] in appropriate cases and requires [that] the decisions be based upon the record as a whole, taking into account the pro-veteran rule known as the 'benefit of the doubt.'" 148 CONG. REC. H9003 (emphasis added).

### E. Meaning of "Clearly Erroneous"

Based on the plain language of the section 7261(a)(4) and (b)(1) amendments and their emphatic legislative history, I conclude (1) that Congress has tasked the Court with the responsibility of evaluating BVA factfinding adverse to a claimant by reviewing all evidence in the ROA in order

---

[17] Senator Rockefeller stated in full regarding VBA § 401:

> Section 401 of the Compromise Agreement would maintain the current "clearly erroneous" standard of review, *but modify the requirements of the review the court must perform* when making determinations under section 7261(a) of title 38. CAVC would be specifically required *to examine the* record of proceedings – that is, the *record on appeal* – before the Secretary and BVA. Section 401 would also provide *special emphasis during the judicial process to the "benefit of the doubt"* provisions of section 5107(b) as *CAVC makes findings of fact in reviewing BVA decisions. The combination of these changes* is intended to provide for *more searching appellate review* of BVA decisions, and thus *give full force to the "benefit of doubt" provision*. The addition of the words "or reverse " after "and set aside" in section 7261(a)(4) is intended to emphasize that CAVC should *reverse clearly erroneous findings when appropriate, rather than remand the case.* This new language in section 7261 *would overrule* the recent U.S. Court of Appeals for the Federal Circuit decision of *Hensley v. West,*[ 212 F.3d 1255 (Fed. Cir. 2000),] which emphasized that CAVC should perform only limited, deferential review of BVA decisions, and stated that BVA fact-finding "is entitled on review to substantial deference." However, nothing in this new language is inconsistent with the existing section 7261(c), which precludes the court from conducting trial de novo when reviewing BVA decisions, that is, receiving evidence that is not part of the record before BVA.

148 CONG. REC. S11334 (remarks of Sen. Rockefeller) (emphasis added).

[18] S. 2237 was passed by the Senate on September 26, 2002. 148 CONG. REC. S9556, S9559 (daily ed. Sept. 26, 2002).

to assess the Board's application of the equipoise standard and (2) that if the Court, based on that assessment, concludes that Secretary's section 5107(b) application was clearly erroneous and thus unlawful then the Court is expressly empowered to *reverse* that finding – that is, not only to declare it wrong but also to correct it.[19] *See Mariano*, 17 Vet.App. at 314-17 (reversing two BVA findings of fact as "clearly erroneous application[s] of the section 5107(b) equipoise standard"); *cf. id.* at 314 (as to another BVA finding of fact, setting aside as "clearly erroneous" but not reversing "Secretary's application of the section 5107(b) equipoise standard"). This process of applying the "clearly erroneous" standard to the Board's application of the section 5107(b) equipoise standard, *see Mariano* and *Roberson III*, both *supra*, raises the question (not previously addressed) whether the "plausible basis in the record" and "only permissible view of the evidence" tests set forth in *Gilbert*, 1 Vet.App. at 52-53, remain viable, if they ever were viable, under the "clearly erroneous" standard as proper measures for this Court's review of BVA factfinding in light of the three new section 7261 mandates.

Although at the advent of this Court's exercise of judicial review the Court had good reason to attempt to follow precedent regarding the scope of review for Article III appellate courts under Rule 52(a) of the Federal Rules of Civil Procedure, the post-VBA statutory scheme in chapter 72 of title 38, U.S. Code, is unique to this Court. Specifically, the VBA amendments, particularly that this Court apply the "clearly erroneous" standard in our review of the Board's application of the section 5107(b) equipoise standard, *see Mariano* and *Mitchell*, both *supra*, render the "plausible basis in the record" and "only permissible view of the evidence" formulas from *Gilbert* unsuited for application to the Board's process of assessing the weight of positive and negative evidence. A reexamination of *Gilbert*, some of our precedential decisions since *Gilbert* that have engrafted new language into its "plausible basis" holding, the very Supreme Court precedents on which *Gilbert* had relied, and recent Supreme Court and Federal Circuit precedent has led me to conclude that our "clearly erroneous" review should be carried out in accordance with the primary (less deferential) definition that *Gilbert* drew from the Supreme Court's opinion in *United States Gypsum Co.*:

> A finding is "clearly erroneous" when ***although there is evidence to support it***, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Gilbert*, 1 Vet.App. at 52 (emphasis added) (quoting *U.S. Gypsum Co.*, *supra*). This criterion is the one used by both the Supreme Court and the Federal Circuit in the *Zurko* litigation, which was concluded in 2000, only two years before the VBA's enactment, and was cited in the Senate Committee report on S. 2237. S. Rep. No. 107-234, 107th Cong., 2d Sess. 18 n.1. In that litigation, the Supreme Court explained the "clearly erroneous" standard as meaning "whether a reviewing judge has a 'definite and firm conviction' that an error has been committed." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999); *see In re Zurko*, 142 F.3d 1447, 1449 (Fed. Cir. 1998) (en banc) (stating

---

[19] *See Atl. Coast Line R.R. Co. v. St. Joe Paper Co.*, 216 F.2d 832, 833 (5th Cir. 1954) (defining "reverse a judgment" as "to overthrow it by a contrary decision, to make it void, to  undo or annul it for error").

that "we affirm decisions as long as we lack a definite and firm conviction that a mistake has been made").[20]

Using the definite-and-firm-conviction criterion, rather than the "no plausible basis in the record" standard, would correct the caselaw creep that began with *Gilbert* itself and has made it increasingly difficult for the Court to conclude that a BVA finding of fact is "clearly erroneous" under section 7261(a)(4). An example of the unfortunate direction that the Court's caselaw has taken is provided by *Hicks v. Brown*, which, five years after its debut in *Gilbert*, characterized the "no plausible basis in the record" criterion as requiring that the evidence be "uncontroverted in the appellant's favor" and that there be "absolutely no plausible basis" in the record for the Board's decision before a BVA finding of fact may be reversed. *Hicks*, 8 Vet.App. 417, 422 (1995). These quoted words and the corresponding heightened standard in *Hicks* were derived from *Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992), but *Hersey* does not support the use of those criteria as a basis for **denying** reversal. Rather, in *Hersey* the Court reversed a Board decision denying a rating of total disability based on individual unemployability (TDIU) and, in doing so, noted that "[t]here is absolutely no plausible basis for the BVA's statement that [the veteran's] disability was 'not of sufficient severity as to preclude hi[s] engaging in substantially gainful employment consistent with his education and occupational experience'" and that the BVA's denial of a TDIU rating was "clearly erroneous in light of the uncontroverted evidence in [the] appellant's favor." *Hersey*, *supra* (quoting BVA decision). However, the Court in *Hersey* (1) had already defined the "clearly erroneous" standard as "the definite and firm conviction that a mistake has been committed" criterion (quoting *U.S. Gypsum Co., supra*, as it had been quoted in *Gilbert,* 1 Vet.App. at 52), and (2) had also already explained that a finding of fact cannot be found clearly erroneous "[i]f the [factfinder]'s account of the evidence is plausible in light of the record viewed in its entirety" or where such a review of the evidence shows that "there are two permissible views of the evidence", *Hersey,* 2 Vet.App. at 94 (quoting *Anderson*, *supra*, as quoted in *Gilbert, supra*). It is thus clear that the use in *Hersey* of the "absolutely no plausible basis" and "uncontroverted" evidence terminology was intended only to illustrate how unfounded the Board's factfinding was in that case, rather than, as *Hicks* used it, to establish a new, more stringent standard for "clearly erroneous" review.

Between the issuance of *Hersey* and *Hicks*, the Court put all the *Gilbert* language together in *Harder v. Brown*, stating:

---

[20] Utilizing this definition is consistent (1) with the characterizations of the "clearly erroneous" standard as less deferential than the "substantial evidence . . . on the record" standard in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(E), and (2) with the fact that the the original Senate-passed version of S. 2237 had adopted the "substantial evidence of record" standard drawn from the APA and that that standard was rejected in the final compromise that became VBA § 401. S. 2237, 107th Cong., 2d Sess., § 501 (amending section 7261(a)(4)); 148 CONG. REC. S9558-9 (Senate passage of reported bill); *see also* 148 CONG. REC. S11337, H9006 (Committees on Veterans' Affairs Explanatory Statement explaining that compromise agreement "would not alter the formula of the standard of review [(that is, the "clearly erroneous" formula)] on [sic] the Court, with the uncertainty of interpretation of its application that would accompany such a change"); S. Rep. No. 107-234, 107th Cong., 2d Sess. 18 n.1 (recognizing that Supreme Court in *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999), had "interpreted" the "'substantial evidence' formula . . . to be slightly *more* deferential than a traditional 'clearly erroneous' standard").

> After a review of the record, we conclude that there is no plausible basis for the BVA's decision. "[B]ecause there is no evidence to support the BVA determination, it is obvious that a mistake has been committed, the finding is not plausible, there can be only one permissible view of the evidence, and, thus, the finding is clearly erroneous." *Karnas v. Derwinski*, 1 Vet.App. 308, 311 (1991); *see also Caldwell* [*v. Derwinski]*, 1 Vet.App. [466,] 470 [(1991)].

*Harder*, 5 Vet.App. 183, 189 (1993). As in *Hersey*, this articulation is appropriate when there is no evidence against the claimant's position on a particular question of material fact, because it demonstrates the gravity of the Board's error. This articulation should not be mistaken for the appropriate **standard of review**, however; for example, in *Mariano*, 17 Vet.App. at 314-17, the Court reversed two findings of fact even though the record contained evidence against the claimant's position, and thus the evidence in support of the claimant's position could not be considered "uncontroverted", *Hicks*, *supra*; *see U.S. Gypsum*, *supra* (calling for a "clearly erroneous" determination "although there is evidence to support" a lower court's finding); *see also Anderson, supra* (calling for review "in light of the record . . . in its entirety").

Moreover, a close reading of the Supreme Court's actual language in *Anderson*, like a close reading of the wording in *U.S. Gypsum*, makes clear that the phrase "if there is a 'plausible' basis in the record" in the *Gilbert* holding omitted the critical words "in light of the record viewed in its entirety" from *Anderson*, 470 U.S. at 574, and "although there is evidence to support [the lower court's finding]" from *U.S. Gypsum*, *supra*. Thus, it appears that *Gilbert* had already strayed afield from the Supreme Court's actual language and paved the way for the *Hicks/Hersey* detour and the evolution of a practice in some cases of this Court's focusing only on a single or a few pieces of negative evidence as providing a basis for affirmance regardless of the overall strength of the evidence in favor of a claim. The Court's opinion in *Mariano, supra*, however, showed the error of such an approach.

Accordingly, I believe that, as a logical evolution of *Roberson III* and *Mariano*, both *supra*, the Court should issue an en banc opinion holding that under the VBA § 401 amendments the Board's application of section 5107(b) is clearly erroneous when, after reviewing the entire evidence of record, the Court has "a definite and firm conviction that a mistake has been committed" by the Board in making a material finding of fact adverse to the claimant – that is, when we have a definite and firm conviction that the evidence on that question did not preponderate against the claimant's

position.[21]  In that situation, the Court should declare the BVA factfinding unlawful and decide whether to set it aside and remand or to reverse it.  38 U.S.C. § 7261(a)(4).  In my view, the Court can make that decision only by assessing the evidence in the context of the section 5107(b) equipoise standard in order to determine whether it is appropriate in a given case for the Court to reverse a finding of fact – that is, declare the correct finding of fact.  *See supra* note 17 and accompanying text.  This assessment is, in effect, the process that the Court recently followed in *Mariano*, when, as noted above, it held that the Board's application of the section 5107(b) equipoise standard as to three findings of fact was clearly erroneous; the Court reversed two of those findings and set aside (but did not reverse) and remanded one finding because evidence in the claimant's favor on that question was not present.  *Compare Mariano*, 17 Vet.App. at 316-17 *and id.* at 315-17, *with id.* at 314.

Finally, I note that, to the extent that there is ambiguity in the statutory language, as the *Roberson III* order maintains, 17 Vet.App. at 139-40, the analysis in this separate statement was formulated in light of the direction of the Supreme Court to resolve ambiguity in a veterans benefits statute in favor of the claimant.  *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (directing that reasonable doubt in statutory interpretation is to be "resolved in the veteran's favor"); *Kilpatrick*, 16 Vet.App. at 6 (quoting *Brown v. Gardner*, *supra*); *see also Jones (Ethel) v. West*, 136 F.3d 1296, 1299 n.2 (Fed. Cir. 1998); *Allen (William) v. Brown*, 7 Vet.App. 439, 446 (1995) (en banc).  Moreover, it is a longstanding maxim of statutory interpretation that remedial legislation, such as VBA § 401, is to be interpreted broadly in order to effectuate its basic purpose. *See Smith (William) v. Brown*, 35 F.3d 1516, 1525 (Fed. Cir. 1994) ("courts are to construe remedial statutes liberally to effectuate their purposes . . . [and v]eterans benefits statutes clearly fall in this category").  Thus, I see no basis for the Court to choose to construe narrowly the VBA provisions given their proclaimant remedial purpose.  *See  Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000)  ("canons of construction . . . require us to give effect to the clear language of a statute and avoid rendering any portions meaningless or superfluous").  When Congress writes legislation that is less than completely clear, it is the judiciary's role to make the best of the language that is enacted and to seek to find a reasonable interpretation of the statutory text consistent with the goals that Congress has indicated it sought to achieve with that legislation.  Only if, after undertaking this analysis, the only reasonable conclusion is that Congress, notwithstanding its intention, failed to provide statutory language that can be fairly interpreted as achieving its basic legislative purpose should a court tell Congress "nice try, but you haven't done the job you apparently intended to do."

### III.  Conclusion

---

[21] In applying the "clearly erroneous" standard, the Board's determinations about the credibility of live-witness testimony before the Board (such as that presented by the appellant here (Record at 443-64)) must be afforded substantial deference.  *See Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) (holding that trial judge's choice "if not internally inconsistent", between credible testimony of live witnesses, "each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, . . . can virtually never be clear error"); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 n.18 (1969); *United States v. Yellow Cab Co.*, 338 U.S. 338, 341-42 (1949).

Because I believe that the question of the meaning of the VBA § 401 amendments has not been clearly and definitively addressed by our Court in light of our decisions in *Gilbert, Roberson III*, and *Mariano*, and has been forcefully and effectively argued by the appellant in his brief, I voted for full-Court examination of these matters. At a minimum, I would require a response from the Secretary before the Court votes on the appellant's motion for initial full-Court consideration. *See* U.S. VET. APP. R. 35(g).

KASOLD, *Judge*, dissenting: I respectfully dissent from the denial of en banc consideration in this case. The appellant seeks en banc review so that the Court might address (1) our application of the "clearly erroneous" standard of review; (2) the benefit-of-the-doubt rule; and (3) the doctrine that once this Court finds an issue warranting remand, we generally will not address other issues (aka the *Best* rule). I believe en banc review is warranted because these issues are of exceptional importance to our judicial review and there is a lack of uniformity or clarity in our caselaw in each of these areas. *See* U.S. VET. APP. R. 35(c) (motions for full-Court decision will ordinarily not be granted "unless such action is necessary to secure or maintain uniformity of the Court's decisions or to resolve a question of exceptional importance").

### A. "Clearly Erroneous" Standard of Review

The meaning of the term "clearly erroneous" was first set out by this Court in *Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990). *Gilbert* cites to *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), for the definition of this term: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gilbert* then cites to *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985), to illustrate when a court might not have a firm conviction:

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982).

*Gilbert*, 1 Vet.App. at 52 (quoting *Anderson*, *supra*).

18

Although *Gilbert* favorably cited to the Supreme Court's definitions of the "clearly erroneous" standard, *Gilbert* subsequently stated that "if there is a plausible basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *Id.* at 53. It is this standard that is primarily used throughout our cases. Whether or not the *Gilbert* standard was designed to be different from that enunciated by the Supreme Court, the fact remains it is. The Supreme Court stated that a "finding is 'clearly erroneous' when, *although there is evidence to support it*, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gypsum*, 333 U.S. at 395 (emphasis added), *quoted favorably in Concrete Pipe & Prods. of Cal., Inc., v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622-23 (1993). Thus, under the standard established by the Supreme Court, even when there is evidence to support a lower tribunal's finding, the reviewing court can reverse it if it has a definite and firm conviction that a mistake has been made, based on the entire record. By contrast, under the *Gilbert* standard, if there is a plausible basis in the record for the decision below, it cannot be overturned.

The Supreme Court also stated that a decision below was not clearly erroneous when that decision provided an "account of the evidence [that] is plausible *in light of the record viewed in its entirety*." *Anderson*, *supra* (emphasis added). This requires both (1) an explanation of the evidence and (2) that the explanation be plausible "in light of the record viewed in its entirety." *Id.* Thus, a plausible basis in the record is not enough to preclude a reversal of a finding; there must be an explanation that is plausible "in light of the record viewed in its entirety." Of course, if there is a plausible explanation in light of the entire record, the Court cannot substitute its own, alternate plausible basis for that of the lower tribunals. *Id.*; *see also Yellow Cab*, 338 U.S. at 342.

Although the *Gilbert* standard is generally used in this Court, it is not uniformly applied. There are a number of cases applying an even stricter, dual-based definition of the "clearly erroneous" standard that permits reversal only when "there is absolutely no plausible basis" for the BVA decision and where that decision "is clearly erroneous in light of the uncontroverted evidence." *See*, *e.g.*, *Kay v. Principi*, 16 Vet.App 529, 533 (2002); *Shoffner v. Principi*, 16 Vet.App 208, 212 (2002); *Pentecost v. Principi*, 16 Vet.App 124, 129 (2002).

The genesis and development of this two-pronged standard is a classic example of the evolution of case meanings over time. The phrase "absolutely no plausible basis" was first used in our cases in *Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992). After restating the Supreme Court's definitions of the "clearly erroneous" standard, as well as noting it as the *Gilbert* standard,[1] the *Hersey* Court then noted that in the case before it "[t]here is absolutely no plausible basis for the BVA's statement" and then found that the BVA decision "was clearly erroneous in light of the uncontroverted evidence in appellant's favor." *Id*. at 95. The "absolutely no plausible basis" and

---

[1] The *Hersey* court made no mention of the standard actually enunciated in *Gilbert* and applied in most of our cases, i.e., "if there is a plausible basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them," *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). *See Hersey v. Derwinski*, 2 Vet.App. 91, 93-95 (1992).

the "uncontroverted evidence" comments were not intended to be a standard of review. Rather, they were the Court's view of the evidence before it; i.e., there was not only no plausible basis in the record as a whole for the Board's finding, but there was also absolutely **no basis** for it given the uncontroverted evidence against it. For whatever reasons, numerous single-judge decisions began citing *Hersey* for this two pronged, stricter proposition. *See*, *e.g.*, *Abrams v. Brown*, No. 92-435, 1993 WL 382114 (Vet. App. Sept. 22, 1993); *Moon v. Brown*, No. 91-2044, 1994 WL 44139 (Vet. App. Feb. 01, 1994). This proposition later made its way into the panel decisions noted above *(Pentecost*, *Shoffner*, and *Kay*, all *supra)*.

I suspect that the *Gilbert* standard and the evolutionary *Hersey* standard were both unintentional deviations from the Supreme Court's definition of "clearly erroneous." Regardless, this is an exceptionally important issue on which we do not have uniformity within the Court, and therefore en banc review is warranted.[2]

### B. The Benefit of the Doubt

Section 5107(b) of title 38, U.S. Code, requires the Secretary to consider all the information and evidence in a veteran's case and, if "there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter," to give the benefit of the doubt to the veteran/claimant. This Court established early on that the Secretary's application of the benefit-of-the-doubt rule, as finally applied by the Board, would be reviewed for whether it was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Gilbert*, 1 Vet.App. at 57-58.

What was once well settled, however, is now open to question as a result of the panel decisions in *Roberson v. Principi*, 17 Vet.App. 135, 146 (2003), and *Mariano v. Principi*, 17 Vet.App 305, 313 (2003), which state the standard of review of the benefit-of-the-doubt rule as "clearly erroneous." Neither case cites a basis for changing the standard of review, with *Mariano* simply citing *Roberson*. *See Mariano*, *supra*. Indeed, neither case cites *Gilbert*. Moreover, *Roberson* gives the impression that "clearly erroneous" was always the standard of review for the Secretary's application of the benefit-of-the-doubt rule. *Id.* There is a conflict in our caselaw on this significant issue and it should be resolved en banc.

### C. The Best Doctrine

The panel decision in *Best v. Principi*, 15 Vet.App. 18, 19 (2001) (per curiam order), proclaimed that "[f]rom the outset, it has been the practice of this Court that when a remand is ordered because of an undoubted error that requires such a remedy, the Court will not, as a general

---

[2] Although I believe the differences between the *Gilbert* and *Hersey* standards of review are significant, to the extent some view them as subtle this should not preclude review. The Supreme Court noted there was a subtle difference between the "substantial evidence" and the "clearly erroneous" standards of review, but still found it important to apply the correct standard. *Dickinson v. Zurko*, 527 U.S. 150, 162-63 (1999).

rule, address other putative errors raised by the appellant." *See also Mahl v. Principi*, 15 Vet.App. 37 (2001) (per curiam order) (acknowledging departures from the *Best* doctrine, but maintaining they are the exception rather than the rule). In support of its proposition, *Best* cites directly to *Dunn v. West*, 11 Vet.App. 462, 467 (1998), and further refers the reader to *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994), and *Mokal v. Derwinski*, 1 Vet.App. 12 (1990). A closer look, however, finds that none of these cases supports the broad proposition announced in *Best*. Indeed, *Dunn* supports a much narrower proposition and almost inverse general rule.

*Dunn* fully addressed the appellant's assertion on appeal that the Board had erred and affirmed the Board on three claims and remanded the fourth. *Dunn*, 11 Vet.App. at 467-68. The fourth claim was remanded because the Court found that the Board had failed to actually obtain records that appeared to be relevant to that claim. These records were deemed to be constructively before the Board, and therefore it was error not to consider them; remand was appropriate. *Id.* Because the records would have to be obtained and considered on remand, the additional assertions that the Secretary failed in his duty to assist by failing to secure the records or that the veteran was denied due process by the Secretary's failing to secure those records were rendered moot. Nothing in *Dunn* stands for the proposition that this Court had a practice of not addressing other claims simply because one claim warranted a remand; *Dunn* suggests only that those issues mooted by the remand are not to be considered.

It also seems that *Best* actually turned the *Dunn* approach on its head, with its "recognition" of a general rule that if a finding or holding on one claim or issue causes remand of a case, none of the other claims or issues generally should be decided at that time by the Court. Although *Dunn* refused to address additional issues that were mooted by decision on one issue, application of the *Best* rule does not depend on mooting an issue; it simply remands all claims and issues in the case to the Board where they all can be reconsidered. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the [Board] will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case.").

The other cases relied on by *Best* similarly do not support the general rule as announced in *Best*. *Aronson* stands for the sole proposition that when a claim is rendered moot, the Court no longer has jurisdiction over that claim or any matters appurtenant to that claim. *Aronson*, 7 Vet.App. at 155-56. *Mokal* stands for the proposition that this Court has adopted the case-or-controversy jurisdictional restraints imposed by Article III of the U.S. Constitution. *Mokal*, 1 Vet.App. at 15. Both cases support the general *Dunn* approach, i.e., not addressing issues mooted by a remand, but not the broad rule enunciated in *Best* that if one issue warrants remand none of the others generally should be addressed.

*Best* further cites to a number of other courts that "regularly decline to address the remaining allegations of error if the court orders a remand and a new trial based on any one allegation of error." *Best*, 15 Vet.App. at 19. Reliance on these cases for adopting the broad principle enunciated in *Best* is misplaced. For one, a new trial is far different than the remand of a case from this Court to the

Board.  In a new trial, the entire process is redone, whereas during new proceedings after a remand from this Court, the record below remains intact; it can be augmented, but it is not redone. Moreover, with the exception of the issue on which the remand was based and those, as in *Dunn*, that were mooted by the remand, I fail to see the basis for believing that the Board will render a different decision on any remaining issues.  This leaves the veteran with the prospect that his case will be remanded as many times as he has separate claims or independent issues, before he can get a final decision.  *See Brambley v. Principi*, 17 Vet.App. 20, 25-28 (2003) (Steinberg, J., concurring). Unlike the moot issues in *Dunn*, the issues and claims remanded under the *Best* construct remain very much alive.

Finally, in addition to being, at best, a stretch from the *Dunn* case, the *Best* principle is applied inconsistently and without uniformity in the Court.  *Compare*, *e.g.*, *Best* and *Mahl,* both *supra, with Pelegrini v. Principi*, 17 Vet.App. 412, 423-24 (2004) (remanding for compliance with 38 U.S.C. § 5103(a) but also addressing another argument raised in case), and *Moran v. Principi*, 17 Vet.App. 149, 155-56 (2003) (remanding for inadequate reasons or bases, but also addressing appellant's arguments regarding 38 C.F.R. § 3.304(f)); *see also Brambley*, *supra* (Steinberg, J., concurring) (enumerating other remandable errors, outside of those addressed by majority option, that without having been so addressed might reoccur on readjudication).  This issue is important and there is a lack of uniformity in this area within our cases, both warranting clarification by the en banc Court.[3]

For the foregoing reasons, I respectfully dissent.

---

[3] *See also Mahl v. Principi*, 15 Vet.App. 37, 40-47 (2001) (per curiam order) (Steinberg, J., dissenting) (noting additional infirmities in the *Best* rule).